UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELISE HILTON, ED HILTON, as Individuals and as next friends for "EH," a mentally disabled adult,
    Plaintiffs,

v.

CATHERINE MISH, and
The CITY OF GRAND RAPIDS,
    Defendants.

Case No.

Hon.:

**PLAINTIFFS DEMAND A JURY**

Joni M. Fixel (P56712)
Collin H. Nyeholt (P74132)
Fixel and Nyeholt, PLLC
Attorneys for the Plaintiff
4084 Okemos Road, Ste B.,
Okemos, MI 48823
Phone: (517) 332-3390
Fax: (517) 853-0434
jfixel@fixellawoffices.com
cnyeholt@fixellawoffices.com

**COMPLAINT and JURY DEMAND**

## STATEMENT OF THE CASE

Plaintiffs Ed and Elise Hilton filed a lawsuit against the Grand Rapids Police Department alleging that the GRPD had discriminated against their daughter, a mentally incapacitated individual, by refusing to properly investigate her kidnapping and rape because they thought she would make a "poor witness." Defendant Catherine Mish, the City Attorney for the City of Grand Rapids at the time, retaliated by sending an email to a private citizen accusing their daughter of being a "crack and heroin whore" when she was abducted.

## PARTIES and JURISDICTION

1. Plaintiff ELISE HILTON is a United States Citizen and a permanent resident of Kent County, Michigan which is within the geographical bounds of the United States District Court for the Western District of Michigan's Southern Division.

2. Plaintiff ED HILTON is a United States Citizen and a permanent resident of Kent County, Michigan.

3. Plaintiff EH is a United States Citizen and a permanent resident of Kent County, Michigan. At the time of the events giving rise to this Complaint, she was a minor. She reached the age of majority on November 3, 2015. She is a mentally disabled adult, subject to the guardianship of her parents Plaintiffs Ed and Elise Hilton.

4. Defendant CITY OF GRAND RAPIDS is a State of Michigan municipality located within the geographical bounds of the Southern Division of the United States District Court for the Western District of Michigan.

5. Defendant CATHERINE MISH was, at the time of the events described in this Complaint, the City Attorney for the Defendant City of Grand Rapids. On or about February 12, 2016 she

resigned as the City Attorney and accepted a position at the Grand Rapids offices of the Dickinson Wright law firm.

6. The Court may exercise general *in personem* jurisdiction over the defendants to this action because of their permanent presence within the geographical bounds of the Court. In the alternative, the Court may exercise specific jurisdiction over the dispute because the events giving rise thereto occurred within the Court's geographical bounds.

7. Venue is properly laid in the Western District of Michigan's Southern Division pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

8. The Court may exercise Subject Matter Jurisdiction over the claims emanating from federal law pursuant to 28 USC § 1331. The Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

**GENERAL ALLEGATIONS**

9. Plaintiffs repeat a re-allege the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

*Elise and EH July 2013 Lawsuit Against the City of Grand Rapids*

10. Plaintiff EH is an individual with a diminished mental capacity. As of January 2012, while she was still 16, she lacked the mental capacity to make decisions of a person of that age. Because of her mental capacity, she was a student at the Hope Academy in Grand Rapids, Michigan. On January 16, 2012 she was disruptive at school and, rather than call her parents to pick her up, officials at the Hope Academy simply told her to leave the school. Hope Academy is located in a

bad part of town. EH was lured into a house. Over the next several days, she was repeatedly raped.

11. It was believed that her abductors were involved in human trafficking. Her abductors took her clothes which is one method traffickers will use to discourage attempts to escape. At one point, her abductors forced EH call her parents and say "everything is fine, don't worry." Elise and Ed could hear the abductors talking in the background on the line, telling her what to say. Finally, after several days of this, EH escaped in a bed sheet and was later found cowering in an abandoned building. She was taken to the YWCA who performed a rape kit and toxicology test and later sent her to the hospital. At the hospital, the extent to which she had been brutalized became apparent: it was discovered that a bottle cap had been forcibly inserted into her cervix.

12. The City of Grand Rapids police were called. After interviewing EH it was decided, because of her impairments, that she would make a "poor witness." Grand Rapids PD declined to investigate further, and the Prosecutor declined to pursue charges against EH's abductors. GRPD, in fact, had the name of one of her abductors but did not interview him for 10 months.

13. The Hilton family believed that the City of Grand Rapids violated their constitutional rights to equal protection of the laws by declining to investigate this crime. On July 8, 2013 they initiated a lawsuit in federal court against the City alleging the same. This suit was filed in the United States District Court for the Western District of Michigan and was assigned case number 13-cv-727. Because Plaintiff EH was a minor at the time, her parents Ed Hilton and Plaintiff Elise Hilton were named as next friends to EH.

*Elise Hilton's Employment with the Acton Institute, Acton's Dispute with the City of Grand Rapids.*

14. During the period of time comprised in this Complaint, Plaintiff Elise Hilton was an employee of the Acton Institute for the Study of Religion and Liberty.

15. The Acton Institute is a political think tank and advocacy group. It takes its name from Lord John Acton who famously remarked "[p]ower tends to corrupt, and absolute power corrupts absolutely." Acton organizes seminars aimed at "educating religious leaders of all denominations, business executives, entrepreneurs, university professors, and academic researchers in economics principals, and in the connection that can exist between virtue and economic thinking." They publish monthly public policy opinions and print a publication called *Religion and Liberty* that, they say, "engages the intellectual reader on issues in the areas of religion, politics, economics, literature, and culture." They also produce another publication called the *Journal of Markets and Morality*.

16. Acton maintains a physical presence on Fulton street, within the City of Grand Rapids that it purchased in 2012.

17. In 2014, the City rejected Acton's request for a tax exemption on its building, parking areas, and personal property at the Fulton street facility. Acton appealed to the City's 2014 Board of Review, and its appeal was denied. Acton then filed a case before the Michigan Tax Tribunal in Lansing that same year. Acton announced that it had reached a consent judgment with the City on March 15, 2016.

18. A community member named Donald E. Zerial became involved in the City's dispute with Acton. Mr. Zerial is an attorney licensed to practice in the State of Michigan. He, at various times back in the 60's and 70's, has acted as a special prosecutor for the City of Grand Rapids. Today, he maintains a private practice in the Grand Rapids area.

19. Mr. Zerial took a keen interest in the dispute between Acton and the City of Grand Rapids. He would attend board meetings and speak on Acton's behalf. He also regularly contacted various

persons in the City Government to express his support for Acton, including the City Attorney, Defendant Catherine Mish.

*Defendant Mish Corresponds with Mr. Zerial Regarding the Acton Dispute, and Brings Plaintiff Elise Hilton and her Daughter into the Discussion.*

20.     On or about March 5, 2015, and upon reasonable information and belief, Mr. Zerial emailed Defendant Mish a link to an article entitled "What Do Beaver Pelts and Green Energy Have in Common?" Upon information, reasonable belief, and Plaintiff Hilton's best recollection, this was a blog posting on the Acton website.

21.     Mr. Zerial contacted her as the City Attorney for the City of Grand Rapids, related to a dispute the City was having with the Acton group.

22.     On March 15, 2015, at 3:30 PM, Defendant Mish sent Mr. Zerial a response to this email from her City of Grand Rapids issued email account. She stated as follows:

> I find this particularly ironic….if you scroll down on the attachment you sent me, and get to upcoming events, you see this entry:
>
> **April 29** – Acton Art Series – The Scarlet Cord – The Evils of Sex Trafficking with Pam Alderman and Elise Hilton
>
> Elise Hilton is a staff member of Acton Institute here in GR. Her daughter, at the age of 15-16 or thereabouts, ran away from home (ran away from her "alternative" high school in downtown GR). She wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth. Her father talked to her on her cell phone and asked where she was / asked her to come home. She refused to come home and refused to tell her father where she was. The police finally found her after many days of her escapades in trading sex for drugs.
>
> And the result? Ms. Elise Hilton the Acton hypocrite dares to sue the City of Grand Rapids, blaming the GRPD for the fact that her daughter ran away from home to become a crack and heroin whore. Currently pending litigation. Case No. I:13-CV-00727, assigned to Hon. Paul Maloney, U.S. District Court for the Western District of Michigan. Apparently, Ms. Hilton the Acton hypocrite believes that the government is the cause of her family's woes. Therefore, the government owes

6

> them a pile of money! It must be the police department's fault, and she and her husband Ed believe they are owed money for this!
>
> The young woman did not run away from home to become a crack and heroin whore because of anything done by the City of Grand Rapids or the GRPD. We did not raise her and did not influence her life choices in this regard. The hypocrisy of the Acton Institute and its employees is simply amazing. Beware that you are dealing with hypocrites, sir.

23. Defendant Mish sent this response on her City of Grand Rapids email.

24. In sending this email, she was acting in her capacity as the City Attorney for the City of Grand Rapids, responding to an advocate citizen's concerns pertaining to the City's property tax dispute with the Acton organization.

25. Correspondence such as this, that are sent on the City Attorney's email account provided by the City of Grand Rapids, are subject to production in response to Freedom of Information Act requests.

26. At the time she sent the March 5, 2015 email described previously to Mr. Zerial, Defendant Mish had access to the investigation file into EH's abduction. Mish therefore knew, or had reason to know, that when Mr. Hilton talked to Elise on the phone he could hear her abductors telling her what to say and threatening her. Therefore, her characterization that EH's father "asked her to come home" and "she refused" was knowingly false and inaccurate when made, or made with blatant disregard to the untruthfulness of this statement.

27. Mish therefore knew, or had reason to know when she sent this email, that the hospital performed a drug screen after EH was rescued from the abandoned building, and that it came back negative. Therefore, her assertion that EH had "whore[d]" herself for "crack and heroin" was knowingly false and inaccurate when made, or made with blatant disregard to the untruthfulness of this statement.

28. Mish knew, or had reason to know, Elise had been physically brutalized by having a bottle cap inserted into her cervix and that she had been found naked and in a bedsheet. Therefore, her assertions that EH had been a willing participant in the events that transpired during her supposed "escapade" and that she had voluntarily acted as a "crack and heroin whore" were knowingly false and inaccurate when made, or made with blatant disregard to the untruthfulness of this statement.

29. Mish was aware, at the time she made this statement, that EH was not of the age of majority and, therefore, could not legally consent to sex. She also knew, when she made this statement, that EH has permanent, lifelong, diminished mental capacity and will NEVER be able to give consent.

30. Michigan Rule of Professional Conduct 3.6(a) provides that "[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing and adjudicative proceeding in the matter." Rule 3.6(a)(1) provides that statements as to "the character, credibility, reputation, or criminal record … of a witness" is prohibited by the rule. Rule 3.8(e) likewise provides that the prosecutor in a criminal action shall "exercise reasonable care to prevent investigators, law enforcement personnel, employees, or other persons assisting or associated with the prosecutor in a criminal case from making" such prohibited extrajudicial statements.

31. Defendant Mish's March 5, 2015 email to Mr. Zerial clearly violated MRPC 3.6(a) and 3.8(e) for several reasons:

   a. It maligned the credibility of Plaintiff EH as a witness to the criminal prosecution of her attackers,

      b. It was sent to a member of the community who was an active advocate in city politics,

      c. It was sent on a governmental email and, therefore, subject to production in a request under the Freedom of Information Act.

32. Mish also released information pertaining to a criminal investigation involving a sexual assault on a minor, with information (her mother's name) that would allow a person of reasonable intelligence to ascertain the minor victim's identifying information.

33. The same day, Mr. Zerial forwarded the March 5, 2015 message, in its entirety, to several members of the media employed by the MLive publication. Upon information and belief, the MLive individuals who received this document took no further action.

*The Hiltons Learn about the March 5, 2015 email*

34. Tom E. Gantert is the Managing Editor of Michigan Capital Confidential which is a self described "daily news site for the Mackinac Center for Public Policy."

35. Mr. Gantert has written various stories pertaining to the Acton property tax dispute with the City of Grand Rapids.

36. Upon information and reasonable belief, in or about April of 2016, Mr. Gantert submitted and received a FOIA request to the City of Grand Rapids for various documents related to the Acton dispute. In response, upon information and belief, he received a copy of the March 5, 2015 email from Defendant Mish to Mr. Zerial.

37. Mr. Gantert knows Plaintiff Hilton through various functions they have mutually attended related to the Acton dispute and other matters of local politics.

38. Mr. Gantert forwarded a copy of the email in question, in its entirety, to Plaintiff Elise Hilton on April 26, 2016.

39. On April 28, 2016, Mr. Gantert published a news story in Michigan Capital Confidential entitled "Grand Rapids City Attorney Calls Alleged Rape Victim a 'Crack and Heroin Whore.'" Mr. Gantert omitted information from the email as to Plaintiffs' identities.

40. As a result of the events described herein, the Plaintiffs, and each of them, have suffered anger, humiliation, mortification and outrage.

41. Plaintiffs have incurred attorney's fees in opposing this serious violation of their rights.

### Count I: First Amendment Retaliation – Legal Redress of Grievances
### 42 USC § 1983
*All Plaintiffs against All Defendants*

42. Plaintiffs repeat and re-allege the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

43. The Plaintiffs had a right, protected by the First Amendment to the Constitution, to seek a redress of grievances by filing a lawsuit before the Court.

44. As of March 5, 2016, this First Amendment right was clearly established. *See Bill Johnson's Rest. Inc. v. NLRB,* 461 US 731 (1983); *BE & K Const. v. N.L.R.B.,* 536 US 516 (2002).

45. Plaintiffs engaged in protected conduct by filing a lawsuit against the City of Grand Rapids on July 8, 2013 when they initiated case number 13-cv-727 against the City of Grand Rapids Police Department.

46. Defendant Mish took an adverse action against the Plaintiffs. She made a statement to a member of the community that implied knowledge of the facts of the investigation into Plaintiff EH's abduction and rape. She further asserted, in her capacity as the City Attorney for the City of Grand Rapids, that EH had acted as a "crack and heroin whore."

47.     Having one's child, the victim of a serious sex crime, accused of being a "crack and heroin whore" by a senior member of government would cause a parent of ordinary firmness from filing a lawsuit.  Therefore, Elise and Ed Hilton could have been deterred from pursuing her right to redress of grievances by Defendant Mish's actions.

48.     Being accused of being a "crack and heroin whore" by a member of government would deter a person of ordinary firmness from filing a lawsuit.  Therefore, EH could have been deterred from pursuing her right to redress of grievances by Defendant Mish's actions.

49.     Defendant Mish's decision to send the offending email was motivated, at least in part, by Plaintiffs decision to seek redress of grievances against Grand Rapids Police in federal court.

50.     The offending email, on its face, refers to the Plaintiffs' filing of 13-cv-727, before launching into the personal attack on EH as being a "crack and heroin whore."

51.     In *Monell v. New York City Dept. of Social Services,* 436 US 658, 691 (1978) the Supreme Court concluded that municipal liability under 42 USC § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature."  In *Pembauer v. City of Cincinnati*, 475 US 469 (1986) the Supreme Court abrogated *Monell* by holding that when an "ultimate decision maker" in a municipal organization is involved in the deprivation, or when that "action is directed by those who establish government policy" the municipality will be liable for the actions.

52.     Defendant Mish was the City Attorney for the City of Grand Rapids when she sent the email in question.

53.     After Mish's resignation from her post on February of 2016, the City of Grand Rapids posted a job for City Attorney and described the responsibilities of the position that Mish had vacated.  In pertinent part, the job posting stated that the City Attorney "[a]dministers the

operations and staff of the law department," "plans, organizes, and directs the programs and activities of the law department," "prepares and administers the annual budget and work plan for the department," and "reviews operations, makes assignments, and applies effective legal policies, practices, and procedures."

54.     Mish, as the City Attorney for the City of Grand Rapids was an "ultimate decision maker" for the City of Grand Rapids, as the Supreme Court used that term in the *Pembauer* decision.

55.     Further, when she sent the email at issue in this suit, she had authority and responsibility to direct government policy in the City of Grand Rapids.  Therefore, sending the "crack and heroin whore" email was an "action … directed by those who establish government policy" which, said the Supreme Court in *Pembauer*, is enough to invoke liability against the municipality for the wrongful actions under § 1983.

56.     For the reasons stated herein, the City of Grand Rapids is vicariously liable for the violation of Plaintiffs EH and Elise Hilton's First Amendment Rights, pursuant to 42 U.S.C. § 1983.

57.     Plaintiff repeats and re-alleges the damages provided above as if restated herein.

### Count II: First Amendment Retaliation – Freedom of Speech and Association
### 42 USC § 1983
*Plaintiff Elise Hilton against All Defendants*

58.     Plaintiffs repeat and re-allege the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

59.     Plaintiff Elise Hilton had a right to freely associate with political advocacy associations of her choice guaranteed by the First Amendment to the Constitution.

60.     This right was clearly established as of March 5, 2016.

61. Plaintiff Elise Hilton engaged in protected conduct by accepting employment with the Acton organization, a political think tank and advocacy group.

62. Elise Hilton engaged in protected conduct by participating in the April 29 Acton Art Series entitled "The Scarlet Cord – The Evils of Sex Trafficking."

63. Defendant Mish engaged in adverse action against Elise Hilton by releasing information as to the sexual assault investigation of her daughter, making false statements about the events behind that investigation, and accusing her daughter of being a "crack and heroin whore."

64. A person of ordinary firmness would be deterred from participating in a group like Acton and taking part in presentations to avoid having their daughter accused of being a "crack and heroin whore" by a government official.

65. Defendant Mish's decision to send the offending email was motivated, at least in part, by Plaintiff Elise Hilton's involvement in Actin.

66. On the face of the offending email, Defendant Mish refers to Plaintiff Elise Hilton as the "Acton hypocrite" after her diatribe about Plaintiff Elise Hilton's daughter's supposed "escapade" as a "crack and heroin whore."

67. Defendant Mish's decision to send the offending email was motivated, at least in part, by Plaintiff Elise Hilton's involvement in the presentation "The Scarlet Cord – The Evils of Sex Trafficking."

68. On the face of the offending email, Defendant Mish invokes Elise Hilton's involvement in "The Scarlet Cord" and then launches into her character attack on EH.

69. Mish, as the City Attorney for the City of Grand Rapids was an ultimate decisionmaker in the city, as the Supreme Court used that term in the *Pembauer* decision.

70. Further, when she sent the email at issue in this suit, she had authority and responsibility to direct government policy in the City of Grand Rapids. Therefore, sending the "crack and heroin whore" email was an "action … directed by those who establish government policy" which, said the Supreme Court in *Pembauer*, is enough to invoke liability against the municipal employer.

71. Plaintiff repeats and re-alleges the damages provided above as if restated herein.

### Count III: Intentional Infliction of Emotional Distress
### Michigan Common Law
*All Plaintiffs against Defendant Mish*

72. Plaintiffs repeat and re-allege the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

73. Defendant Mish engaged in extreme and outrageous conduct by

   a. Drafting correspondence on her City of Grand Rapids email account –publicly available to any person who can draft a FOIA request- that stated that EH, a *minor*, and a *rape victim* was acting as a "crack and heroin whore" when she was kidnapped and assaulted for several days,

   b. Releasing information about an investigation into the rape of minor EH in this publicly available format with identifying information for EH's mother that could lead to identification of EH herself.

74. In sending this correspondence, it was reasonably foreseeable that the statement she made would find their way back to Plaintiffs Elise Hilton and EH.

75. It was reasonably foreseeable that people in Plaintiffs' position would suffer severe emotional distress as a result of seeing that an upper level government official had accused EH of being a "crack and heroin whore."

76. Defendant Mish's conduct demonstrates intent or, at best, recklessness to the likelihood that severe emotional distress would result from her actions.

77. Plaintiffs Elise Hilton and EH have suffered severe emotional distress as a result of Defendant Mish's actions.

78. Defendant Mish's actions are the cause of Plaintiffs Elise Hilton and EH's emotional distress.

79. In making the statements at issue, Defendant Mish exceeded the scope of her authority as the City Attorney. The City Attorney does not have authority to release confidential information pertaining to investigation of minors who are victims of rape. The City Attorney does not have authority to make false and defamatory statements about rape victims. Therefore, MCL 691.1407(5) does not immunize Defendant Mish's actions.

80. Defendant Mish's statements were made with malice towards Plaintiff EH and Elise Hilton and made in bad faith.

81. In releasing this information, Mish was not engaged in significant decision making and, therefore, her acts were ministerial and not discretionary.

82. For the reasons stated above, Defendant Mish may not enjoy governmental immunity for her tortious conduct towards the Plaintiffs pursuant to MCL 691.1407 *et seq.*

83. Plaintiff repeats and re-alleges the damages provided above as if restated herein.

**WHEREFORE** Plaintiffs demand the following relief:

1. Compensatory damages in an amount determine to be appropriate by the jury,
2. Exemplary damages in an amount determined appropriate by the jury,
3. Punitive damages in an amount determine appropriate by the jury,

4. Statutory attorney's fees,

5. Pre and post judgment interest,

6. An order enjoining the defendants from further violations of Plaintiffs' rights, and

7. Such other relief as this Court may deem appropriate in law or equity.

**PLAINTIFFS DEMAND A JURY TRIAL**

Respectfully Submitted,

Dated:  June 7, 2016                                             /s/   Joni M. Fixel_____