# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ELISE HILTON, *et al*                                      Case No. 16-cv-000702
          Plaintiffs,

v.                                                                    Hon. Gordon J. Quist

CATHERINE MISH, *et al*
          Defendants.                                        Mag. Judge Ellen S. Carmody

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CITY OF GRAND RAPIDS' MOTION TO DISMISS

TABLE OF CONTENTS

Table of Contents ................................................................................................... ii

Index of Authorities ............................................................................................... iii

Counter-Statement of Issues Presented ................................................................. v

Introduction ............................................................................................................ 1

Facts ....................................................................................................................... 1

Argument ............................................................................................................... 6

    I.       Plaintiffs have stated a valid claim under 42 USC § 1983 ....................... 6

          A.  Mish was acting under color of state law when she responded to Zerial's email about the Acton dispute. .......................................................... 7

          B.  Plaintiffs have stated a claim for Constitutional violations ................ 13

    II.      Applying the "single act theory" from *Pembaur*, the City is liable for Mish's sending the email because she was the City's ultimate decisionmaker with respect to responding to citizen complaints and handling litigation .......................................... 19

Conclusion ........................................................................................................... 25

Signature ................................................................................................................ a

Certificate of Service ............................................................................................. a

INDEX OF AUTHORITIES

**Cases**

*Bible Believers v. Wayne County, MI*, 805 F.3d 228 (6th Cir. 2015) .....................................*passim*

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ..........................................................18

*Burden v. Elias Bros. Big Boy Restaurants,* 613 N.W.2d 378 (Mich.App. 2000).......................17

*Daizar Mate v. Fields*, 2016 WL 4363008 (E.D. Mich. Aug. 16, 2016)....................................6

*Dean v. Byerly*, 354 F.3d 540 (6th Cir. 2004).................................................................11

*Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718 (6th Cir. 2010)........................................*passim*

*Graham v. Connor,* 490 US 386 (1989) ...........................................................................12

*Griffin v. Maryland,* 378 U.S. 130 (1964) .........................................................................11

*Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999) .......................................17

*McMillan v. Monroe County*, 520 US 781 (1997) ...........................................................22

*Mezibov v. Allen,* 411 F.3d 712 (6th Cir. 2005)...............................................................17

*Monell v. New York City Dep't of Social Services,* 436 US 658 (1978)...............................*passim*

*Paterek v. Village of Armada*, 801 F.3d 630 (6th Cir. 2015)...................................22,24

*Pembaur v. City of Cincinnati,* 475 US 469 (1986)...........................................................*passim*

*Rondigo v. Twp. Of Richmond,* 641 F.3d 673 (6th Cir. 2011) ...........................................3

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ......................................................*passim*

*United States v. Classic*, 313 US 299 (1941)...................................................................7

*West v. Atkins*, 487 U.S. 42 (1988) ...............................................................................6,8

*Wurzelbacher v. Jones-Kelley,* 675 F.3d 580 (6th Cir. 2012)...................................17, 18, 19

**Statutes**
42 USC § 1983...............................................................................................................*passim*

MCL § 600.2911(1) ................................................................................................................17

**Court Rules**

MRPC 3.6 ........................................................................................................................9,13

**COUNTER-STATEMENT OF ISSUES PRESENTED**

I.    Whether City Attorney Mish was acting under color of state law when she sent an email to a private citizen discussing a pending litigation between the City and the Acton Institute from her City of Grand Rapids email account.

Plaintiff Answers:        Yes

Defendant Answers:        No


II.   Whether a government official's making false and defamatory statements and revealing embarrassing and private information about a *private citizen* (as opposed to a prisoner or public employee) is an "adverse action" that may give rise to a Section 1983 claim under the *Thaddeus-X* analysis.

Plaintiff Answers:        Yes

Defendant Answers:        No


III.  Whether the City Attorney is a final decisionmaker, with respect to handling of citizen complaints and corresponding about pending litigation, such that the City of Grand Rapids is responsible for her actions pursuant to *Monell* and *Pembaur.*

Plaintiff Answers:        Yes

Defendant Answers:        No


IV.   Whether a Section 1983 Plaintiff must plead a governmental policy or custom when they have shown a single act by a governmental actor with final decisionmaking authority over the action in question.

Plaintiff Answers:        No

Defendant Answers:        Yes


v

## Introduction

This case centers around the actions of Catherine Mish, the former Grand Rapids City Attorney, on behalf of the City while responding to a private citizen's concern about the City's litigation against the Acton Institute. In responding to an email from the citizen about the Acton dispute, City Attorney Mish released embarrassing information to which she had access as a result of her position as City Attorney and made a series of false and defamatory statements about one of Acton's employees. She accused Acton's employee's daughter of being a "crack and heroin whore" and accused Acton of being "hypocrites" for employing her mother. When the employee in question discovered this statement after a FOIA request by the media, this lawsuit followed.

## Facts

### I. The Hiltons' Discrimination Lawsuit Against the City of Grand Rapids.

EH is a mentally disabled adult. She was a student at the Hope Academy in Grand Rapids, a school that purports to cater to persons with special needs such as EH. (Comp, ECF 1, PageID 1-16 at ¶ 10.) In January of 2012, EH acted up at school and Hope Academy staff, rather than call her parents, simply told her to leave. *Id.* Wandering alone through the bad neighborhood in which the school sits, the worst happened: EH was lured into a house and, over the course of the next several days, repeatedly raped. *Id.* EH's abductors took her clothes from her to discourage her from attempting to escape, which is a common tactic used by persons involved in human trafficking. (*Id.* at ¶ 11.) At one point, her captors forced her to call her parents and say "everything is fine, don't worry." *Id.* The Hiltons did not believe her statements to be sincere because as she was saying them they could hear her captors in the background telling her what to say. *Id.* Eventually, EH was able to wrap herself in a bed sheet and escape into the cold Michigan January night. *Id.* She was later found cowering in an abandoned

1

building and, eventually, taken to a YWCA.  *Id.*  At the hospital, it was discovered that a bottle cap had been forcibly inserted into her cervix.  *Id.*

The Hiltons called the City of Grand Rapids police.  (*Id.* at ¶ 12.)   As is typical of trauma survivors, and particularly to be expected of a trauma victim with existing mental impairments, she had difficulty sequencing events.  After interviewing EH and her parents, the GRPD Detective stated that EH would make a "pathetic witness" due to her mental impairments. *Id.*  GRPD failed to investigate appropriately; they had a lead on the name of one of her abductors for *10 months* and did not bother to interview him.  *Id.*  Again because it was anticipated that EH's mental disabilities would make her a "poor witness," the city prosecutor refused to bring charges.  *Id.*

On July 8, 2013 the Hiltons filed case number 13-cv-727 in the Western District of Michigan before Hon. Paul L. Maloney.  (Comp., WD MI Case No. 13-cv-727, ECF 1, PageID 1.)  They sued Hope Academy, and some of its staff, pursuant to the state created danger doctrine for causing EH to leave the school unsupervised and unprotected.  *Id.*  They also sued the GRPD for equal protection violations because they refused to expend police resources to EH based on her mental disability.  *Id.*  On March 24, 2016 Hon. Maloney GRANTED the City of Grand Rapids' motion to dismiss.  (Op. and Order, WD MI Case No. 13-cv-727, ECF 69, PageID 982-994.)  The claim against Hope Academy remains pending.

II.     *The Acton Dispute.*

Meanwhile, Elise Hilton's employer, the Acton Institute, was involved in a dispute with the City of Grand Rapids.  Acton is, basically, a political think tank.  (Comp, ECF 1, PageID 1-16 at ¶ 15.)  Acton maintains a physical presence within the City of Grand Rapids.  (*Id.* at ¶ 16.) In 2014, the City rejected Acton's request for a tax exemption.  (*Id.* at ¶ 17.)  Acton appealed to

the City's Board of Review, lost, and filed a case before the Michigan Tax Tribunal. *Id.*; *see also Acton Institute v. City of Grand Rapids,* MI Tax Tribunal ("MTT") Case No. 14-003116-TT (2015).[1]  Acton filed its petition for review with the MTT on May 23, 2014 and it was finally resolved on March 8, 2016. *Id.*  The City Attorney's office represented the City of Grand Rapids at all times during the MTT proceedings. *Id.*

A community member named Donald E. Zerial took a keen interest in the City's dispute with Acton. (Comp, ECF 1, PageID 1-16 at ¶ 18.)  Zerial, a Michigan attorney, had acted as a special prosecutor for the City of Grand Rapids during the 60's and 70's. *Id.*  Today, he maintains a private practice in the Grand Rapids area. *Id.*  Zerial advocated for Acton by attending City board meetings and speaking on Acton's behalf. (*Id.* at ¶ 19.)  He also regularly contacted various officials in the City government to express his support of the Acton institute, including City Attorney Mish. *Id.*

> III.    *Mish Responds to Zerial by Making False Statements about Hilton's Civil Rights Suit to Discredit her Employer, the Acton Institute.*

On or about March 15, 2015, Mr. Zerial reached out to the press regarding the Acton dispute.  He emailed Zane McMillin, Monica Scott and Shandra Martinez, employees of the local publication MLive, and told them

> I think it would be a worth-while investment for the Grand Rapids Press and Mlive to make on behalf of the West Michigan community to have a reporter attending these meetings and do a Press review for all of your faithful readers. At best it would give your readers yet another prospective [*sic*] of the hostile world we are facing each and every day.  **Ex. A**, D. Zerial 3/5/15 11:24 AM email (paragraphs combined).

---

[1] As the City of Grand Rapids correctly notes, the Court may properly consider public records when available to the Court when deciding a 12(b)(6) motion such as the instant. (Def's Brief, ECF 9, PageID 37 at fn 2, *citing Rondigo v. Twp. Of Richmond,* 641 F.3d 673 (6th Cir. 2011)). The MTT's docket report for the disputes is available at http://taxdocketlookup.lara.state.mi.us/Details.aspx?PK=103784, accessed 8/19/2016.

Along with this message, he forwarded an article that was posted on Acton's website entitled "What Do Beaver Pelts and Green Energy Have in Common?" *Id.* The subject line on the email read "What Do Beaver Pelts and Green Energy Have in Common?" *Id.*

Apparently, Zerial's found its way to Catherine Mish, the City attorney, because about an hour later she drafted an email on her City of Grand Rapids email account to Mr. Zerial entitled "RE: What Do Beaver Pelts and Green Energy Have in Common?" Mish, apparently, viewed Zerial's email as pertaining to the Acton dispute because she told him

> [p]erhaps you should ask the Acton Insitute why they think they should be exempt from paying real property taxes? And why they are suing the City of Grand Rapids to demand their valuable government handout of that real property tax exemption?
>
> For an institute that proclaims the below political message, it seems to me that they are entirely hypocritical in throwing an absolute hissy fit because they didn't get the government handout that they believe they are "entitled" to. *Id.,* C. Mish 3/5/2015 12:30 PM email to D. Zerial. *Id.*

Apparently, Mish continued to think about the email she received from Zerial because, about three hours later, she sent him another email "Re: What Do Beaver Pelts and Green Energy Have in Common?" Mish's 3:30 PM email to Zerial said that

> I find this particularly ironic….if you scroll down on the attachment you sent me, and get to upcoming events, you see this entry:
>
> **April 29** – Acton Art Series – The Scarlet Cord – The Evils of Sex Trafficking with Pam Alderman and Elise Hilton
>
> Elise Hilton is a staff member of Acton Institute here in GR. Her daughter, at the age of 15-16 or thereabouts, ran away from home (ran away from her "alternative" high school in downtown GR). She wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth. Her father talked to her on her cell phone and asked where she was / asked her to come home. She refused to come home and refused to tell her father where she was. The police finally found her after many days of her escapades in trading sex for drugs.

4

And the result?  Ms. Elise Hilton the Acton hypocrite dares to sue the City of Grand Rapids, blaming the GRPD for the fact that her daughter ran away from home to become a crack and heroin whore.  Currently pending litigation.  Case No. I:13-CV-00727, assigned to Hon. Paul Maloney, U.S. District Court for the Western District of Michigan.  Apparently, Ms. Hilton the Acton hypocrite believes that the government is the cause of her family's woes.  Therefore, the government owes them a pile of money!  It must be the police department's fault, and she and her husband Ed believe they are owed money for this!

The young woman did not run away from home to become a crack and heroin whore because of anything done by the City of Grand Rapids or the GRPD.  We did not raise her and did not influence her life choices in this regard.  The hypocrisy of the Acton Institute and its employees is simply amazing.  Beware that you are dealing with hypocrites, sir.  **Ex. A;** Comp, ECF 1, PageID 1-16 at ¶ 22.

The statements that Mish made to Zerial were demonstrably untruthful and inaccurate.[2] At the time she sent this email on March 5, 2015, Mish had access to the investigation file for EH's abduction.  (Comp, ECF 1, PageID 1-16 at ¶ 26.)  She therefore knew, or had reason to know, that EH did not "run away" from the school, but was *made to leave*.  She also knew that when EH called her parents they could hear her abductors on the line telling her what to say.  *Id.* Mish's statement to Zerial that EH's father "asked her to come home" and "*she refused*" was, therefore, knowingly false or made with disregard to its falsity.  *Id.*  Likewise, because Mish had access to EH's hospital records after she was found in the abandoned building, she knew or should have known that EH's drug screen came back negative.  (*Id.* at ¶ 27.)  Her statement, then, that EH "whor[ed]" herself for "heroin, cocaine, alcohol and so forth" was also knowingly false or made with reckless disregard to its untruthfulness.  *Id.*  Further, Mish would have been privy to the information in the investigation about the bottle cap found lodged in EH's cervix.

---

[2] Defendant Grand Rapids, apparently as a defense of Mish's disclosure of the facts of the investigation to Zerial, points repeatedly to the fact that the Hiltons "made detailed and highly personal statements regarding their daughter's alleged rape" in her 2013 Complaint.  (Def's Brief, ECF 9, PageID 37.)  The significant difference is that the Hiltons' statements in the Complaint were *truthful* and *accurate* while Mish's statements in her email were not.

(*Id.* at ¶ 28.)  Her representation that EH was on a consensual "escapades trading sex for drugs" was knowingly false because she should have known of the particular violence against her.  *Id.* Mish would also have known that EH had, in desperation, ran into the cold Michigan January night wrapped only in a bedsheet which should have signaled to her that her characterization that EH was on a consensual "escapade" was untruthful and inaccurate.  *Id.*

In April of 2016 Tom E. Gantert, Managing Editor of a publication known as Michigan Capital Confidential, sent a Freedom of Information Act request to the City of Grand Rapids for various articles of information related to the Acton dispute.  (*Id.* at ¶ 36.)  He received a copy of the March 5, 2015 email from Mish to Zerial within the City's response.  *Id.*  Mr. Gantert forwarded the email to Elise Hilton on April 28, 2016.  (*Id.* at ¶ 38.)  And, he published a copy of the email in an article entitled "Grand Rapids City Attorney Calls Alleged Rape Victim a 'Crack and Heroin Whore.'"  (*Id.* at ¶ 39.)  The Hiltons promptly filed the instant lawsuit after learning of Mish's conduct towards their daughter.

ARGUMENT

## I.      Plaintiffs Have State a Valid Claim Under 42 USC §1983.

A plaintiff must show two things to assert a claim under 42 USC § 1983:  (1) that the conduct complained of was committed by a person action under color of state law; and (2) that this conduct deprived the person of the rights, privileges or immunities secured by the Constitution and laws of the United States.  *Daizar Mate v. Fields*, 2016 WL 4363008, at *2, E.D. Mich. Aug. 16, 2016) (*citing* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988)). The statute's prohibition on depriving a person of a constitutionally protected right extends to retaliation against an individual for exercising a constitutional right.  *See eg Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (Section 1983 claim based on retaliation for exercising

First Amendment Rights.)  In the instant, it is alleged that Ms. Mish retaliated against Plaintiffs for exercising their constitutional right to seek redress of grievances in the Court, and their right to affiliate with the Acton institute, by making scurrilous statements about them to a community member.

   **A. Mish was acting under color of state law when she responded to Zerial's email about the Acton dispute.**

   The City argues that, when she sent the email in question, Mish was not acting under color of state law and, therefore, asserts that the Section 1983 claim fails on this basis. Mish responded to Zerial's correspondence about the Acton dispute on her City of Grand Rapids email account.  At 12:30, she wrote Zerial in response to his email and said "[p]erhaps you should ask the Acton Insitute why they think they should be exempt from paying real property taxes?"  A few hours later, at 3:30, she wrote to Zerial again in response to his email by making a series of false and defamatory statements about EH's rape investigation, stating that EH was a "crack and heroin whore," and accusing Acton and its employees of being "hypocrites."  The thought, apparently, was to sway Zerial from backing Acton by demonstrating that Acton and its people were "hypocrites" for employing someone who would bring a lawsuit on behalf of their "crack and heroin whore" of a daughter.  The question is whether Mish's emails to Zerial were sent under 'color of state law' as that term is used in Section 1983 litigation.

   In *United States v. Classic*, the Supreme Court gave a definition of the "under color of state law" requirement, stating that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color of' state law."  313 US 299, 326 (1941).  The Supreme Court later amplified this statement, saying that

> [t]o constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor.  State employment is generally sufficient to render the defendant a state actor.  It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.  *West v. Atkins*, 487 U.S. 42, 48–50 (U.S. 1988) (internal citations and quotations omitted).

In sum, if the complained of action in a 1983 suit is taken by a state employee and either done in the course of the state employee's duties or made possible by the state employment, the action is considered under color of state law.  The question boils down to whether the bad actor was employed by the government and, if so, whether they were acting in furtherance of their duties to the government in taking the complained of actions or whether they abused their position with the government to take the complained of actions.

Mish was acting in furtherance of her duties as City Attorney when she sent the email to Zerial.  As Defendant Grand Rapids acknowledges, Mish's duties included "serving as the legal advisor to the City, trying cases involving the City" and "investigating citizen complaints about the City's misapplication or misuse of funds, abuse of its corporate powers, or failure to perform duties required by law."  (Def's Brief, ECF 9, PageID 42 (quoting Mish's duties as City Attorney.))  As of March 5, 2015, the City Attorney's office was representing the City against Acton in the dispute before the Michigan Tax Tribunal.  Mr. Zerial, a community member advocating on Acton's behalf, had emailed members of the media.  **Ex. A.**  Mish viewed this correspondence as relating to the Acton property dispute because she wrote Zerial back an hour later in response and said "[p]erhaps you should ask the Acton Institute why they think they should be exempt from paying real property taxes?"  *Id.*  Three hours later she tried another tact, emailing Zerial to dissuade his advocacy on Acton's part because they were "hypocrites" for

8

employing Hilton who had sued the City on behalf of her "crack and heroin whore" of a daughter.  *Id.*  Mish's actions may fairly be described as responding to Zerial's citizen complaint that the City had abused its corporate powers by denying Acton its property tax benefits. Further, trial publicity and media involvement is unequivocally a portion of the lawyer's duties towards his client which is why such activities are governed by the Rules of Professional Conduct.  (*See, generally,* MRPC 3.6.)  Mish's email to Zerial discussing the dispute, and attempting to sway his support by casting Acton and its employees as "hypocrites," then may also be fairly characterized as an action in furtherance of the City's position before the Michigan Tax Tribunal that Acton was not entitled to property tax exemptions which she as City Attorney was advancing.

Mish's position as City Attorney made her particular misconduct, making false and defamatory statements about EH and Elise Hilton, possible.  As City Attorney, Mish had access to EH's investigation file that a private citizen would not.  This access, combined with her position as City Attorney, gave credence and weight to the statements about the investigation that a private citizens may not have had.  A private citizen, for instance, may have opined that EH was on an "escapade" as a "crack and heroin whore."  However, a private citizen would not have had *access to the investigation file* and, therefore, these statements would have been more easily dismissed.  When City Attorney Mish asserted, falsely, that EH had "run away" from the school, or that her father had told her to come home and she "refused," these statements would be more credible coming from the City Attorney than coming from someone off the street. Likewise, when City Attorney Mish asserted that EH was "whor[ing]" herself for "heroin, cocaine, alcohol and the like," despite the absence of heroin or cocaine in her chemical test, an average person would be more likely to believe this statement as true, given the source.  Further,

Mish was clad in the respectability of the City Attorney's position.  Therefore, a member of the public would (wrongly) assume that she would have basis for these statements that she made about EH.  The false statements Mish made about EH's investigation were given weight and credibility because she was the City Attorney.  Mish abused her position as City Attorney to make false and defamatory statements about EH, a minor and a victim of sexual assault.

The situation at bar differs sharply from the circumstances in the cases relied upon by Defendants, *Davis, Redding,* and *Hogan.*  (Def's Brief, ECF 9, PageID 42.)  In each case, there was a lack of showing that the state employee in question was acting in the course of governmental employment, or advancing governmental interests.  There was no indication that a mayor, at a golf outing, was acting pursuant to a duty possessed by the Mayor to respond to citizen complaints or advance the city's interests in a litigation.  Similarly, there was no showing that the mayor had a duty to write newspaper articles or that he was advancing an interest of the city in doing so.  Because she was responding to a citizen's comment about a dispute which the City Attorney's office was handling, Mish was within her official duties and was advancing the city's interests.

Defendants argue that "Mish's email was not an action taken under color of state law" because "although sent from her City email account" the email in question "reflected only [Mish's] personal opinions about Plaintiffs."  (Def's Brief, ECF 9, PageID 40-41.)   They state that "a defendant's private conduct, outside the course or scope of [her] duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under the color of state law."  *Id.*  Ignoring that Mish's conduct was within her duties, this argument fails as a matter of law.  The Supreme Court has held that a defendant in a § 1983 action may still act under color of state law even though a private citizen could have taken the same action as that

taken by the defendant because "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law." *Griffin v. Maryland,* 378 U.S. 130, 135 (1964). The Sixth Circuit, applying this legal precept, has found reversible error when a trial court dismissed a 1983 claim on the basis that the state actor who took particular actions *could* have engaged in the actions he took as a private citizen. *Dean v. Byerly*, 354 F.3d 540, 552-53 (6th Cir. 2004).[3] Here, whether or not Mish *could* have responded to Acton's blog post as a private citizen is immaterial because she *did* contact Zerial on her City of Grand Rapids email account as the City Attorney. And, while Mish *could* have made statements opining as to the credibility of EH's allegations as a private citizen, she *did* make statements about her rape investigation as a City Attorney.

The City raises the concern that "[n]owhere in the City Charter, Ms. Mish's contract, or in the duties articulated by Plaintiffs in the Complaint is Ms.Mish tasked with responding to citizen emails with unprofessional, personal opinions on the subject email." (Def's Brief, ECF 9, PageID 42.) In like fashion, the City is quick to point the Court to Ms. Mish's obligation to perform her duties for the city in a "professional manner." (*Id.* at PageID 37.) The argument seems to be that, because Mish exceeded her authority as City Attorney in sending this highly *unprofessional* email, she was not acting under color of state law. This argument misconstrues the point of the "color of state law" requirement. The inquiry is whether the bad act was taken as a state employee, *not* whether the bad actor exceeded the authority he was given in doing so.

---

[3] The Sixth Circuit so ruled because it found that "the fact that [defendant] could have made a private citizen report on [plaintiff's] character or privately sought a trespass action is not controlling, and it was inappropriate for the district court to grant summary judgment on that basis. Rather the controlling issue is whether [defendant] possessed state authority and whether [defendant] purported to act under that authority." *Dean*, 354 F.3d at 552-53 (6th Cir. 2004).

The City, it should be noted, have not cited a single case to support its proposition that a defendant avoids liability under Section 1983 when it is shown they acted outside of the permissible constraints of their office through their bad acts.  They will not be able to because in *any* Section 1983 claim will be found a governmental officer who acted outside of the permissible constraints of their office through their bad acts.  Generally, government employees are expected to abide by the constitution and laws of the land, and are not permitted to violate a person's rights in the course of their duties.  Most, if not all, governmental offices from the president of the United States to the Michigan State Police take an oath of office where they swear to uphold the constitution and laws of the state and of the country.  Section 1983 liability attaches when a governmental officer abuses their powers of office to violate someone's rights.  Most, if not all, Section 1983 claims involve a situation where someone who has taken such an oath breaks it by violating the rights of an individual guaranteed by the constitution and laws of the land.  If all it took to avoid liability under Section 1983 was a violation of the terms of office, there would be no liability under Section 1983 because *every* Section 1983 violation involves a violation of the terms of office.

By way of example, if the police stop a man without suspicion, beat him unconscious without provocation, and let him lapse into a diabetic coma because they refuse to let his friends give him orange juice, they have exceeded the permissible scope of their authority as police officers.  *Graham v. Connor,* 490 US 386 (1989).  Police officers are precluded, not just by the constitution, but by the oath they take and the terms of their employment, from engaging in excessive force.  However, they are nonetheless subject to liability under Section 1983 because they were acting in the course of their employment.  *Id*.

Mish did, as Defendants point out, respond to Zerial with "unprofessional, personal opinions." (Def's Brief, ECF 9, PageID 42.) However, when she made these unprofessional statements, she was advancing the interests of the City and acting as the City Attorney. She may have exceeded the acceptable scope of her employment.[4] But, she was certainly acting in the course of her employment. She may be subject to liability under Section 1983.

In summary, Mish's duties as the City Attorney for the City of Grand Rapids included investigating (and, presumably, responding to) citizen complaints and representing the City in litigation. The City Attorney's office, in fact, *was* representing the City in litigation related to the Acton Institute's property tax dispute. In sending the email to Zerial, Mish was responding to a citizen complaint about the city's handling of the Acton situation. And, in writing Zerial about the Acton dispute, she was advancing the City's interests related to the pending litigation by attempting to discourage Zerial from continuing to offer his public support to Acton. The email was sent from Mish's City of Grand Rapids email account. And, the email contained references to information, (or, at least, the untruthful implication of information) that she had access to solely because of her position as the City attorney. In sending this email, Mish was acting under color of state law.

### B. Plaintiffs have stated a claim for Constitutional violations.

Defendants correctly note that, in order to state a claim of First Amendment Retaliation pursuant to Section 1983, Plaintiffs must show that (1) [they] engaged in protected conduct; (2) an adverse action was taken against [them] that would deter a person of ordinary firmness from

---

[4] Indeed, Michigan Rule of Professional Conduct 3.6(a)(1) precludes an attorney who is participating, or has participated, in an investigation from making extrajudicial statements as to the "character, credibility, reputation, or criminal record … of a witness." Mish certainly violated the standards of professional ethics in making the statements she did about Plaintiff Hilton and EH.

continuing to engage in that conduct; and (3) there is a causal connection between elements one and two[.]"  (Def's Brief, ECF 9, PageID 43 *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  Defendants do not contest that Plaintiffs engaged in protected conduct.[5]  Therefore, there is no dispute as to the first element.  Defendants do not contest the fact that there was a causal connection between Plaintiff's filing of the lawsuit, her affiliation with Acton, and Mish's email.[6]  The Court may therefore presume, for purposes of this motion, that the third element of the *Thaddeus-X* analysis is satisfied.

Defendant's argument concentrates on the second element, the "adverse action" requirement.  The City argues that there was "no adverse action that would deter a person of ordinary firmness from engaging in protected conduct" because the Plaintiff's injury for having a ranking member of government call their rape-victim daughter a "crack and heroin whore" was "de minimis."  (Def's Brief, ECF 9, PageID 43-44.)  The City applies the wrong definition of "adverse action" to this dispute; the Sixth Circuit has held that when a private individual alleges First Amendment Retaliation, a lower threshold applies to the second element of the *Thaddeus-X* analysis.

In *Fritz v. Charter Twp. Of Comstock*, the Sixth Circuit discussed the "adverse action" requirement which is the second element of *Thaddeus-X*.  592 F.3d 718 (6th Cir. 2010).  The

---

[5] Indeed, the Supreme Court has held that one's right to seek redress of grievances by filing a lawsuit is protected by the First Amendment.  *See BE&K Const. v. N.L.R.B.,* 536 US 516 (2002) (right to seek redress of grievances in court protected by First Amendment.)  It is also well established that a person's right of association is protected by the First Amendment.  *See, generally Smith v. Arkansas State Highway Emp. Local 1315,* 441 US 463 (1979) ("[t]he First Amendment protects the right of an individual to speak freely, to advocate ideas, to **associate with others**, and to petition his government for redress of grievances.")  Therefore, Plaintiff's right of affiliation with the Acton Institute was also protected by the First Amendment.

[6] Indeed, the email on its face refers to Plaintiff Hilton's filing of the lawsuit.  And, it explicitly refers to Plaintiff Hilton repeatedly as the "Acton hypocrite."  There is no serious contention that there is no causal link between Hilton's filing of suit, and affiliation with Acton, and the email that was sent.

plaintiff, Fritz, was a private insurance agent.  She got into a dispute with the Township about her business signage.  She attended township board meetings to protest the Township's determination against her.  In retaliation for doing so, she claimed, the township contacted her insurance agency and made false and defamatory statements to get her fired.  She sued for First Amendment Retaliation. The Trial Court surveyed caselaw, found that the board's defaming *Fritz* did not rise to the level of an "adverse action" under to the *Thaddeus-X* analysis, and dismissed for failure to satisfy the second element of the claim.

The Sixth Circuit reversed, because it believed that a government's decision to defame a *private citizen* satisfied the adverse action requirement articulated in *Thaddeus-X.* In reaching this conclusion, the Sixth Circuit noted that "[t]here are very few cases in this Circuit addressing First Amendment retaliation against private individuals."  *Id.* at 724.  "Most of the case law in the Circuit involving retaliation claims involves public employees who publicly criticize the government, i.e., their employer, or involves prisoners who are harassed or threatened by prison officials for engaging in protected conduct."  *Id.*  The Court found, then, that "[o]ur caselaw therefore provides insufficient guidance on whether Plaintiff's complaint is sufficient to state a claim of retaliation, especially with regard to the adverse action."  *Id.*  The Sixth Circuit went on to discuss the impact of this observation on the "adverse action" requirement from *Thaddeus-X.*

> [t]he term "adverse action" arose in the employment context and has traditionally referred to actions such as "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Thaddeus–X,* 175 F.3d at 396. However, this Circuit has held that any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation. *Id.* at 397. **The analysis of this factor must be tailored to the circumstances** such that prisoners might have to endure more than public employees, who in turn might have to endure more than the average citizen. *Mezibov,* 411 F.3d at 721 (citing *Thaddeus–X,* 175 F.3d at 398).  (*Id, emphasis* added, citations original.)

15

After determining that "adverse action" factor "must be tailored to the circumstances" of each case, the Court went on to describe a terraced approach with varying levels of "adverse action" for different cases.  Private citizens have the lowest threshold showing.

> Plaintiff is not a public employee, official, or prisoner, and so the level of injury she must allege would be the lower limit of a cognizable injury for a First Amendment retaliation claim.  The appropriate formulation for these circumstances is whether the actions of [individual defendant] and other [municipal] officials would be sufficient to deter an average citizen from participating in public meetings and criticizing local officials about matters directly relevant to the citizen's business interests in the community.  *Id.*

*Fritz* instructs that the adverse action element of the *Thaddeus-X* "must be tailored to the circumstances" of each case.  We still ask whether the government's actions would deter a person of ordinary firmness from engaging in the protected conduct.  But, the Court is also required to apply a lower threshold to government activity directed towards private citizens than it does towards public employees that takes into account the specific circumstances of the case.  The question in this case, then, is whether Mish's actions described herein would deter an *average citizen* of ordinary firmness from filing a lawsuit or associating with Acton.  Would a citizen still choose to associate with the Acton Institute if they knew that, in response for doing so, the City Attorney would make false and defamatory statements about the details of their daughter's rape investigation?  Would a private individual still choose to file a lawsuit if they knew that in response the City Attorney would publicly, falsely state that their daughter was a "crack and heroin whore" in response?  The answer is a resounding no.  *Fritz,* it should be noted, particularly reasoned that the government making false and defamatory statements about a private individual likely satisfies the second *Thaddeus-X* factor.  Because Mish's conduct meets the definition of adverse action, per the *Fritz* analysis, the second element of *Thaddeus-X* is satisfied.

The City's assertion that Mish's behavior was a "de minimis" violation is without merit. Under Michigan's defamation statute, "[w]ords imputing a lack of chastity to any female or male" are per se defamatory, meaning that they are actionable absent any showing of special harm.  MCL § 600.2911(1); *accord Burden v. Elias Bros. Big Boy Restaurants,* 613 N.W.2d 378, 382 (Mich.App. 2000).  Though we are not discussing a defamation action presently, the fact that the law of the State of Michigan grants particular disfavor to statements imputing lack of chastity should be considered when evaluating whether such a statement can ever be viewed as a "de minimis" injury.

In support of their contention that Plaintiff's claim should be dismissed because her injury is "de minimis," the Defendants cite *Wurzelbacher v. Jones-Kelley,*[7] *Mezibov v. Allen,*[8] and *Mattox v. City of Forest Park.*[9]  (Def's Brief, ECF 9, pageID 45.)   Each case is distinguishable from the instant, when *Fritz'* holding is considered.  The Plaintiff in *Mattox* was a "former City Counsel Member and Firefighter."   The higher standard for public employees would have applied to his claim and this case, therefore, is not informative to the present case pursuant to the *Fritz* framework. *Mezibov* was decided in 2005, a full five years before Fritz, so it did not have the benefit of the Court's later direction as to the standard to apply to First Amendment Retaliation claims brought by *individuals* as opposed to state workers and prisoners. *Mezibov* was further complicated because the plaintiff was an *attorney* the free speech he alleged to have been retaliated for making was in court.  This complicated the analysis because, as the Court noted, the particular constraints and limitations on attorney's statements before the Court by the Court Rules and standards of professional conduct limit the application of First-

---

[7] 675 F.3d 580 (6th Cir. 2012)
[8] 411 F.3d 712, 722 (6th Cir. 2005)
[9] 183 F.3d 515, 523 (6th Cir. 1999)

Amendment protection to the dispute.  Finally, *Wurzelbacher* is more helpful to Plaintiffs than Defendant because of the reasoning behind its conclusion.

In *Wurzelbacher* the "adverse action" complained of in the First Amendment Retaliation suit was that "defendants, without [the plaintiff's] knowledge, performed several improper database searches under his name."  *Wurzelbacher*, 675 F.3d at 583-584.  The court applied the *Thaddeus-X* framework and, in fact, invoked the *Fritz* standard.  *Id*.  In finding a lack of "adverse action," the Sixth Circuit particularly relied on the fact that Mr. Wurzelbacher was "not defamed" and "did not suffer the public disclosure of intimate or embarrassing information" as a result of the defendants' database search.  (*Id,* differentiating from *Fritz,* 592 F.3d at 726 and *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998)).  The implication from this passage from *Wurzelbacher,* of course, is that government's defaming someone or releasing intimate and embarrassing information *is* an "adverse action" under the Sixth Circuit's application of the *Thaddeus-X* analysis.

In the case at bar, the Hiltons *were* defamed and the Hiltons *were* subject to public disclosure of intimate and embarrassing information: Mish made a series of false statements referencing information in the investigation file not previously in the record and misconstruing its contents.  Mish accused their daughter of being a "crack and heroin whore."  Mish claimed that EH's father spoke to her she "refused to come home."  **Ex. A.**  This statement was false; EH's abductors *made* her call her parents, and they could hear them on the line telling her what to say.  Mish also claimed that EH "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth."  Mish had the investigation file, so she knew that EH did not have any heroin or cocaine in her system according to her post-rape toxic screen.  Mish also implied, yet again falsely, that EH was using crack and heroin while on

her "escapade."  The fact that Mish's statements were defamatory or, at least, intimate and embarrassing differentiates the case from *Wurzelbacher* and compels a different result.

In summary, the City of Grand Rapids does not challenge the fact that the first and third factors from the *Thaddeus-X* analysis are satisfied.  It has asserted only that the second element, adverse action, is not satisfied because the email Mish wrote Zerial that accused EH of being a "crack and heroin whore" was not "adverse action" and only stated a "de minimus" violation of her rights.  The Sixth Circuit has held that when the court applies the *Thaddeus-X* analysis to the claim by a private individual, it should apply a less rigorous requirement to show "adverse action" on the government's part.  *Fritz*, 592 F.3d at 724.  The Sixth Circuit has implied that this standard is met when government makes statements that defame a private individual in retaliation for exercising their First Amendment rights.  *Wurzelbacher*, 675 F.3d at 583-584 (citing *Fritz,* 592 F.3d at 726).  And, it has implied that this standard is met when government releases an individual's intimate or embarrassing personal information in retaliation for exercising their First Amendment rights.  *Id,* citing *Bloch*, 156 F.3d at 681.  The Mish email to Zerial defamed EH by accusing her of being a "crack and heroin whore."  Mish's email released intimate and embarrassing information available to her from the City's limited investigation into EH's kidnapping and rape.  And, she made false and inaccurate statements about the event. Applying *Fritz* and *Wurzelbacher's* interpretation of *Thaddeus-X* to the instant, Plaintiffs have stated a claim for constitutional violations.

**II. Applying the "single act theory" from *Pembauer*, the City is Liable for Mish's Sending the Email Because she was the City's Ultimate Decisionmaker with Respect to Responding to Citizen Complaints and Handling Litigation.**

19

The City of Grand Rapids correctly notes that *Monell v. New York City Dep't of Social Services*[10] is an important decision with respect to a municipality's liability for claims under 42 USC § 1983.  (Def's Brief, ECF 9, PageID 46.)  The decision disclaimed *respondeat superior* as a means to impose liability against municipalities for the constitutional torts of their officers. The *Monell* court found that, in order to assert liability against a municipality under § 1983, one must show that "official policy is responsible for a deprivation of rights protected by the constitution" and "[a]t very least there must be an affirmative link between the policy and the particular Constitutional violation alleged."  (*Id.* at 46-47.)  *Monell*, however, is not the end of the story.

In *Pembaur v. City of Cincinnati*[11] the Supreme Court had occasion to revisit its holding in *Monell* after a ranking member of government was himself involved in a constitutional violation.  Mr. Pembaur was a physician accused of welfare fraud.  The County Sheriffs and City of Cincinnati police procured court orders requiring two of Pembauer's employees to testify in the investigation.  The police showed up at Pembaur's clinic to serve the orders on the employees.  In response, Pembaur barred the door to the clinic and refused to let them in. Eventually, the deputies on scene called the Sheriff, who told them to call the County Prosecutor and follow instructions.  The County Prosecutor, in turn, told the deputies to force the door. They did.  With an axe.  When the dust settled, Pembauer sued under § 1983 for violation of his Fourth and Fourteenth Amendment rights because the police lacked authority to force their way onto private property to effect service on third-parties absent a search warrant.  Pembaur also named the City and the County as defendants to this 1983 action.  The district court dismissed the municipal defendants and the Sixth Circuit Court of Appeals affirmed, reasoning that "the

---

[10] 436 US 658 (1978).
[11] 475 US 469 (1986).

individual officers were not acting pursuant to the kind of 'official policy' that is the predicate for municipal liability under *Monell*." *Id.* at 476.  The Supreme Court reversed and, in so doing, announced an important distinction in *Monell's* reasoning.

The Supreme Court acknowledged *Monell's* reasoning that, in order to impose liability on a municipality under Section 1983, the constitutional deprivation must be pursuant to a municipal custom or policy.  *Id.* at 479.  The Court, however, noted that "[w]ith this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480.  The Court held that "municipal liability under § 1983 attaches where- and only where- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483-484.  So holding, the Supreme Court ruled that "[i]n ordering the Deputy Sheriffs to enter petitioner's clinic the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under § 1983." *Id.*

*Pembaur* held that, when municipal officials with ultimate authority over the decision in question are involved in the challenged activity, the municipality itself is liable.  Courts have referred to this precept from *Pembaur* as the "single act theory." *See, eg Burgess v. Fischer,* 735 F.3d 462 (6th Cir. 2013).  In order to prevail under the "single act theory" the plaintiff must show (1) a deliberate choice to follow a course of action is made from among various alternatives (2) by the official responsible for establishing final policy with respect to the subject matter in question that (3) is the moving force behind the plaintiff's harm.  *Id.  See also Bible Believers v. Wayne County, MI*, 805 F.3d 228 (6th Cir. 2015) (citing *Pembauer* for proposition that "a single

unconstitutional act or decision, when taken by an authorized decisionmaker, may be considered a policy and thus subject a county to liability.")

Under this analysis, identifying whether the municipal employee is a "final policy-maker" or "ultimate decision maker[12]" requires an examination of applicable state law regarding the legal authority possessed by local officials. *McMillan v. Monroe County*, 520 US 781, 785-86 (1997). Such an individual is one who has ultimate authority within the municipality for the *particular decision* at issue. In *McMillan*, the Supreme Court considered a Section 1983 action based on various actions of law enforcement that involved the Sheriff. The County argued that the Sheriff was not a authorized decisionmaker because he lacked policymaking authority for the entire county. In finding that the County Sheriff was the authorized decionmaker for purposes of the 1983 claim, the court noted that "we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity."

Similarly, we see a fairly recent example of this reasoning in *Paterek v. Village of Armada*, 801 F.3d 630, 651 (6th Cir. 2015). In Paterek, two developers sued the village alleging Section 1983 violations after being denied a zoning variance. The village claimed, much as the City of Grand Rapids does now, that it was not liable for the individual decisions pursuant to *Monell.* The Sixth Circuit applied *Pembauer* and held that the village *was* liable for actions of its Building Inspector because he was "imbued with primary responsibility for enforcing the village's zoning ordinances" and he was "singularly responsible for issuing COOs." *Id.   Paterek*

---

[12]  Caselaw has used either term to describe such a municipal official.

tells us that the 'ultimate decisionmaker' is not someone who has ultimate authority over policymaking.  He is the person with ultimate, final discretion over the decisions at issue.

More on point, the Sixth Circuit has held that the municipal attorney is considered a policymaker under this doctrine with respect to law enforcement decisions directed by the attorney.  *Bible Believers,* 805 F.3d at 260 (6th Cir. 2015).  In this case, an anti-Muslim advocacy group sued the County of Wayne under § 1983 because they were arrested after assembling and protesting at an annual Arabic cultural festival in Southfield.  Wayne County's "Corporate Counsel," the County's analog to a City Attorney, was involved in the County's handling of the Bible Believers' protest.  The Sixth Circuit applied *Pembauer* and held that Wayne County was properly liable for the individual unconstitutional acts of the Deputy Chiefs of Police because "the Deputy Chiefs consulted Corporation Counsel at the Festival to confirm that they could threaten the Bible Believers with arrest[.]"  Because "Corporate Counsel" had final authority over law enforcement decisions, *Pembaur* allowed municipal liability for actions taken pursuant to his direction.

All told, the caselaw tells us that in order for *Pembaur* liability to apply against a municipality, we are looking for a single decision by an "ultimate decisionmaker" in the municipality.  This is an individual with ultimate decision making authority as to the action that is complained of.  Applying this rubric to the instant case, Defendant Mish was an ultimate decisionmaker as that term has been used in caselaw interpreting *Pembaur*.  As the City Attorney, Mish was responsible to "administer[] the operations and staff of the law department," "plan[], organize[], and direct[] the programs and activities of the law department," "prepare[] and administer[] the annual budget and work plan for the department," and "review[] operations, make[] assignments, and appl[y] effective legal policies, practices, and procedures."  (Def's

23

Brief, ECF 9, PageID 41 at fn 3; Comp, ECF 1, PageID 11-12 at ¶ 53.)  As Defendant admits, the City Attorney's duties include "serving as the legal advisor to the City, trying cases involving the City" and "investigating citizen complaints about the City's … abuse of its corporate powers, or failure to perform duties required by law."  (Def's Brief, ECF 9, PageID 42 *citing* City Charter, ECF 9-3 § 93.)  Mish therefore had ultimate and final say in the handling of the City's litigation against Acton.  She had full discretion in deciding how to handle media and public comments related to the Acton dispute.  She had ultimate and final say in deciding how to respond to Zerial's email about the Acton property tax dispute.

Defendants argue that Mish was "not an 'ultimate decisionmaker' because "[h]er role as City Attorney did not include establishing government policy – in the context of the City Charter, policymaking is limited to the members of the City Commission."  (Def's Brief, ECF 9, PageID 48.)  This argument misapprehends the definition of 'ultimate decisionmaker.'  The "ultimate decision maker" is one who has ultimate authority within the municipality for the *particular decision* at issue.  *See Paterek*, 801 F.3d at 651 (6th Cir. 2015); *Bible Believers,* 805 F.3d at 260 (6th Cir. 2015).  In the instant case, with respect to the decision over how to handle the Acton dispute and respond to citizen emails regarding the same, the person with ultimate authority was City Attorney Mish.

The City argues that "Plaintiffs fail to plead the existence of an official policy for which the City can be liable and have alleged to no official policy that was the 'moving force' in the claimed deprivation of Plaintiff's rights, as required by *Monell* and *Pembaur*."  (Def's Brief, ECF 9, PageID 48.)  *Pembaur* has established that, when a municipal officer with ultimate authority acts, his actions may fairly be said to represent municipal policy. *Pembaur*, 475 US at 480.  As the Sixth Circuit noted in *Bible Believers,* "[a] plaintiff may demonstrate the existence

24

of a policy, custom, or usage in *a variety of ways*" including "a single unconstitutional act or decision, when taken by an authorized decisionmaker, may be considered a policy and thus subject a county to liability." *Bible Believers*, 805 F.3d at 260 (6th Cir. 2015) (citing *Pembaur*). Defendant's argument that Plaintiffs "fail to plead the existence of an official policy" is a nonissue. Plaintiffs have pled an ultimate decisionmaker was responsible for the constitutional deprivation. Therefore, pursuant to *Monell*, *Pembaur*, and *Bible Believers*, the City may be held liable.

Catherine Mish was the City Attorney for the City of Grand Rapids. She had ultimate authority to represent the City in litigation, and to investigate and handle citizen complaints about how the City exercised its authority. When she wrote her email to Zerial, she was exercising that authority. When she did so, she made false and defamatory statements about EH and her family in retaliation for their involvement with the Acton institute and for filing a discrimination lawsuit in the Western District of Michigan. This was an action by a person with final decisionmaking authority over the manner in which these decisions would be undertaken. This is precisely the sort of claim that the Supreme Court contemplated in *Pembaur*. And, it is precisely the sort of claim that the Sixth Circuit approved in *Bible Believers*. Because Mish was a final decisionmaker for the City with respect to responding to citizen complaint and representing the City in litigation, the City may be held liable for her unconstitutional actions while doing so pursuant to *Monell* and *Pembaur*.

## CONCLUSION

For the reasons stated herein, the Court should DENY Defendant City of Grand Rapids' Motion to Dismiss in its entirety.

**SIGNATURE**

Respectfully Submitted,

Dated: 8/29/2016

  /s/ Collin H. Nyeholt
Collin H. Nyeholt (P74132)
Fixel & Nyeholt, PLLC
Attorneys for the Plaintiffs
4084 Okemos Road, Suite B
Okemos, MI 48864
(517) 332-3390
cnyeholt@fixellawoffices.com

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify, under penalty of perjury, that on today's date I served the attached document on the court and all parties of record via the Court's ECF system

Dated:  8/29/2016

  /s/ Collin H. Nyeholt
Collin H. Nyeholt

a