# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELISE HILTON, *et al*
    Plaintiffs,

Case No. 16-cv-000702

v.

Hon. Gordon J. Quist

CATHERINE MISH, *et al*
    Defendants.

Mag. Judge Ellen S. Carmody

Joni M. Fixel (P56712)
Collin H. Nyeholt (P74132)
FIXEL & NYEHOLT, PLLC
Attorneys for the Plaintiffs
4084 Okemos Road, Suite B
Okemos, MI 48864
(517) 332-3390
(517) 853-0434 (fax)
jfixel@fixellawoffices.com
cnyeholt@fixellawoffices.com

Laura S. Amtsbuechler (P36972)
Laura Bailey Brown (P79742)
JOHNSON, ROSATI, SCHULTZ
& JOPPICH, P.C.
Attorneys for Defendant City of GR
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
(248) 489-1726 (fax)
lamtsbuechler@jrsjlaw.com
lbrown@jrsjlaw.com

Thomas L. Fleury (P24064)
Gouri G. Sashital (P64628)
Stacy L. Jitianu (P74873)
KELLER THOMA, P.C.
Attorneys for Defendant Mish
26555 Evergreen Road, Suite 1240
Southfield, MI 48076
(313) 965-7610
(313) 965-4480 (fax)
tlf@kellerthoma.com
gsr@kellerthoma.com
slj@kellerthoma.com

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CATHERINE MISH'S MOTION TO DISMISS

TABLE OF CONTENTS

Table of Contents ............................................................................................................ ii

Index of Authorities ........................................................................................................ iii

Counter-Statement of Issues Presented .......................................................................... v

Introduction ..................................................................................................................... 1

Counter-Statement of Facts ............................................................................................ 1

Argument ......................................................................................................................... 7

   I.     Plaintiffs have stated a valid claim under 42 USC § 1983 ................................... 7

      A.  Mish was acting under color of state law when she emailed Mr. Zerial about the Acton property tax dispute ............................................................................... 8

      B.  Mish is not entitled to qualified immunity ................................................... 12

         1.  Plaintiffs have stated a claim of constitutional violations ........................... 12

            a.  Mish's conduct was an "adverse action." ........................................ 13

            b.  Mish's actions caused Plaintiffs to suffer "specific harm." ............ 16

            c.  Mish's defamation of EH, Assertion of EH's unlawful conduct, and revelation of embarrassing details of EH's rape investigation would deter further action .......................................................................... 20

         2.  Mish violated Plaintiff's clearly established rights ....................................... 21

   II.    Plaintiffs have stated a valid claim of Intentional Infliction of Emotional Distress ...... 24

   III.   Hon. Maloney has already ruled in the prior matter that Plaintiff EH may prosecute the claim under a pseudonym.  The doctrine of collateral estoppel prevents relitigation of this ruling in the instant claim.  There is no basis for dismissal under Rule 10 ............. 25

Conclusion ..................................................................................................................... 25

## INDEX OF AUTHORITIES

**Cases**

*Atlanta Cmty. Sch v. Alpena-Montmorency-Alcona Educ. Serv. Dist,*
2012 WL 4133563 (ED MI, 2012)........................................................... 15

*Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) .......................... 15, 18

*BE & K Const. v. N.L.R.B.,* 536 US 516 (2002) ..................................... 22

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ................................. *passim*

*Bondar v. D'Amato,* 2007 WL 1700114 (E.D. Wis. June 11, 2007) ........ 16

*Colson v. Grohman,* 174 F.3d 498 (5th Cir. 1999) ................................. 16

*Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718 (6th Cir. 2010) ....... 14,15

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982). ........................................... 21

*Henry v. Metro Sewer Dist.,* 922 F.2d 332 (6th Cir. 1990) .................. 12

*Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999) ............. 15, 18

*McComas v. Board of Educ.,* 422 Fed.Appx. 462 (6th Cir. 2011)......14, 18, 19, 20

*Mezibov v. Allen,* 411 F.3d 712 (6th Cir. 2005) .............................. 18, 19

*NAACP v. Alabama,* 357 US 449 (1958) ................................................. 23

*Quigley v. Tuong Vinh Thai,* 707 F.3d 675 (6th Cir. 2013) ............... 21, 22

*Saylor v. Bd. Of Educ.,* 118 F.3d 507 (6th Cir. 1997) ............................ 23

*Scherer v. Wiles,* 2016 WL 4655738 (6th Cir. 2016) ............................. 25

*Suarez Corp. Indus. V. McGraw,* 202 F.3d 676 (4th Cir. 2000) ............ 16

*Taylor v. City of Falmouth,* 187 Fed.App'x 596 (6th Cir. 2006) .......... 15

*Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999)........................7,13, 21

*Veney v. Hogan,* 70 F.3d 917 (6th Cir.1995).......................................... 12

*United States v. Classic,*  313 US 299 (1941) ........................................ 8

*Waters v. City of Morristown,* 242 F. 3d 353 (6th Cir. 2001) ............... 9

*West v. Atkins*, 487 U.S. 42 (U.S. 1988) ................................................................ 8-9

*Wurzelbacher v. Jones-Kelley,* 675 F.3d 580 (6th Cir. 2012) ......................... 14,15,18, 19

*X-men Sec. Inc. v. Pataki,* 196 F.3d 56 (2d Cir. 1999) ..................................... 16

**Statutes**
42 USC § 1983 ............................................................................................................*passim*

## COUNTER-STATEMENT OF ISSUES PRESENTED

I.      Whether City Attorney Mish was acting under color of state law when she sent an email from her City of Grand Rapids email account to a private, advocate citizen discussing a pending litigation in which her office was representing the City.

Defendant Mish Argues:          No

Plaintiffs Answer:              Yes


II.     Whether Mish's revelation of intimate, private, and embarrassing details from Plaintiff EH's rape investigation was an "adverse action" that may give rise to a Section 1983 claim.

Plaintiffs Answer:      Yes

Defendant Mish Argues:   No


III.    Whether a government official's making false and defamatory statements asserting *criminal conduct* and *sexual promiscuity* of a *private citizen* (as opposed to a prisoner or public employee) was an "adverse action" that may give rise to a Section 1983 claim.

Defendant Mish Argues:          No

Plaintiffs Answer:              Yes


IV.     Whether the First Amendment's protection of an individual's right to seek redress of grievances before the court was "well established," as that term is used in Section 1983 jurisprudence, as of March 5, 2015.

Defendant Mish Argues:          No

Plaintiffs Answer:              Yes


V.      Whether the First Amendment's protection of an individual's right to speech, political affiliation, and criticism of government was "well established" as of March 5, 2015.

Plaintiffs Answer:  Yes

Defendant Mish did not address this question.

VI.     Whether the right to be free from retaliation from government officials for exercise of constitutional rights was itself well established as of March 5, 2015.

Plaintiffs Answer:            Yes

Defendant Mish did not address this question.


VII.    Whether a government official who makes statements that are at worst false and defamatory or, at best, revealing of embarrassing information about a rape investigation, in response to a person's political affiliation, speech, seeking redress of grievances from the court, and criticism of the government is entitled to qualified immunity from a First Amendment retaliation claim for making said statements.

Plaintiffs Answers:            No

Defendant Mish Answers:        Yes


VIII.   Whether Plaintiffs have stated a valid claim of Intentional Infliction of Emotional Distress against Defendant Mish based on her false and inaccurate statements about EH, a mentally incapacitated victim of sexual assault, that she had "whore[d]" herself for "heroin, cocaine, alcohol and so forth"

Defendant Mish Answers:        No

Plaintiffs Answer:            Yes


IX.     Whether Plaintiff EH is required to relitigate the question of whether she may proceed in this action under a pseudonym, in light of Hon. Maloney's prior ruling in case number 13-cv-737 that she may.

Plaintiffs Answer:        No

Defendant Mish has not addressed this question.

## INTRODUCTION

This case centers around the actions of Catherine Mish, the former Grand Rapids City Attorney, on behalf of the City while corresponding with a private citizen about the City's litigation against the Acton Institute.  In responding to an email from the citizen about the Acton dispute, City Attorney Mish released embarrassing information about a rape investigation to which she had access as a result of her position as City Attorney.  And, she made a series of false and defamatory statements about the victim of the rape, who happened to be the daughter of one of Acton's employees.  She accused Acton's employee's daughter of being a "crack and heroin whore" and asserted that Acton were a bunch of "hypocrites" for employing her "hypocrite" mother after she had filed a lawsuit against the City on behalf of her "crack and heroin whore" daughter.  She went so far as to make certain factual assertions to support her statement that the girl was "whoring" herself for "crack and heroin" which are demonstrably false and inaccurate.

## COUNTER-STATEMENT OF FACTS

I.      _Plaintiff Hiltons' Lawsuit Against the City of Grand Rapids_

Plaintiff EH is a mentally disabled adult. She was a student at the Hope Academy in Grand Rapids, a school that purports to cater to persons with special needs such as EH.  (Comp, ECF 1, PageID 1-16 at ¶ 10.)  In January of 2012, EH acted up at school and Hope Academy staff, rather than call her parents, simply told her to leave.  _Id._  Wandering alone, she was subsequently lured into a house and repeatedly raped.  _Id._  After several days of this, she covered herself in a bedsheet[1] and escaped into the cold January night.  After interviewing EH and her parents, the Grand Rapids Police Department's Detective that was assigned to the matter determined that EH would make a "pathetic witness" due to her mental impairments and GRPD thereafter failed to investigate appropriately and follow up on leads on the event.  _Id._

---

[1] Her attackers took her clothes to prevent her from trying to escape.

1

Outraged by the City's mishandling of the event, the Hiltons filed suit against the City, its detective, and others on July 8, 2013. The matter proceeded as case number 13-cv-727 in the Western District of Michigan on before Hon. Paul L. Maloney. (WD MI Case No. 13-cv-727, Comp, ECF 1, PageID 1.) There is no general right to police protection. However, police department are not allowed to discriminate in the application of police resources. The Hiltons therefore alleged that the City of Grand Rapids had discriminated against EH by refusing to investigate her rape because of her mental impairments, and because she was viewed as a runaway. (WD MI Case No. 13-cv-727, Am. Comp, ECF 23-1, PageID 438-441.)

Plaintiffs made a series of statements about EH's kidnapping and rape in the pleadings. However, at *no* point in the pleadings in the prior matter did the Hilton's ever state that EH had "run away from home to become a crack and heroin whore." They would not have, because this statement is *not true*. At no point in the pleadings in the prior matter did the Hiltons state that EH had "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth." And, at no point in the pleadings in the prior matter, or the instant, did the Hiltons state that while she was missing EH's "father talked to her on her cell phone and … refused to come home and refused to tell her father where she was.[2]"

As of March 5, 2015, when Mish sent the email to Mr. Zerial, the City was currently involved in a lawsuit against EH and her family wherein EH had alleged she had suffered discrimination because the City of GR refused to adequately investigate and prosecute her kidnapping and rape.

II.      *The Acton Property Tax Dispute.*

In the midst of Elise Hilton's civil rights suit against Grand Rapids her employer, the Acton Institute, was involved in it own dispute with the City. Acton is, basically, a political think tank and

---

[2] They plead, more accurately and completely, that they received a call from EH where they could hear a man in the background telling her to what to say. (WD MI Case No. 13-cv-737, Am.Comp, ECF 23-1, PageID 421 ¶ 43.) Given this additional fact, it was clear that when she *said* she was "okay," as her captor threatened her to do, it was anything but true. Mish ignored this detail.

advocacy group.  (Comp, ECF 1, PageID 1-16 at ¶ 15.)  Acton maintains a physical presence within the City of Grand Rapids.  (*Id.* at ¶ 16.)  In 2014, the City rejected Acton's request for a tax exemption.  (*Id.* at ¶ 17.)  Acton appealed to the City's Board of Review, lost, and filed a case before the Michigan Tax Tribunal.  *Id.*; *see also Acton Institute v. City of Grand Rapids,* MI Tax Tribunal ("MTT") Case No. 14-003116-TT (2015).[3]  Acton filed its petition for review with the MTT on May 23, 2014 and it was finally resolved on March 8, 2016.  *Id.*  The City Attorney's office represented the City of Grand Rapids at all times during the MTT proceedings.  *Id.*  The City eventually lost when the MTT found that it had wrongfully denied Acton's claim for a tax exemption.  *Id.*  But, as of March 5, 2015, the claim remained pending.

A community member named Donald E. Zerial took a keen interest in the City's dispute with Acton.  (Comp, ECF 1, PageID 1-16 at ¶ 18.)  In her brief, Mish claims that Zerial was a "friend" of hers.  (Motion, ECF 10, PageID 147.)  This fact is not reflected in the Complaint and she has made no affidavit to support its veracity.  Regardless, "friendly" or not, the fact remains that when Mish sent the email to him Zerial was actively advocating for Acton by attending City board meetings, speaking on Acton's behalf, and contacting various officials in the City government to express his support of the Acton institute, including City Attorney Mish.  (Comp, ECF 1 at ¶ 19.)

Whether a personal "friend" or otherwise, the fact is not in dispute that as of March 5, 2015, the day Mish sent the fateful email to Mr. Zerial from her City of Grand Rapids email account, Mish's office was currently representing the City of Grand Rapids before the Michigan Tax Tribunal.  And, whether a friend or not, when Mish emailed Zerial, he was a community member who was actively advocating on Acton's behalf with respect to the dispute.

---

[3] As the City of Grand Rapids correctly notes, the Court may properly consider public records when available to the Court when deciding a 12(b)(6) motion such as the instant.  (Def's Brief, ECF 9, PageID 37 at fn 2, *citing Rondigo v. Twp. Of Richmond,* 641 F.3d 673 (6th Cir. 2011)).  The MTT's docket report for the disputes is available at http://taxdocketlookup.lara.state.mi.us/Details.aspx?PK=103784, accessed 8/19/2016.

3

III.     *Mish responds to Zerial's email by making false statements about Hiltons' civil rights lawsuit and about EH in an apparent attempt to discredit her employer, the Acton Institute.*

On or about March 15, 2015, Mr. Zerial reached out to the press about Acton.  He emailed several employees of the local publication "MLive" and told them

> I think it would be a worth-while investment for the Grand Rapids Press and Mlive to make on behalf of the West Michigan community to have a reporter attending these meetings and do a Press review for all of your faithful readers.  At best it would give your readers yet another prospective [*sic*] of the hostile world we are facing each and every day.  (Exhibit, ECF 11-1, PageID 449, Zerial 3/5/15 11:24 AM email (paragraphs combined)).

Along with this message, he forwarded an article that was posted on Acton's website entitled "What Do Beaver Pelts and Green Energy Have in Common?"  *Id.*  And, the subject line on the email read "What Do Beaver Pelts and Green Energy Have in Common?[4]"  *Id.*

Mish now claims that Zerial's March 15 email "was actually directed to Julie Hoogland, Editor for the *Grand Rapids Press,* and Ms. Mish was blind copied."  (Brief, ECF 10, PageID 150.)  Further, she asserts that "[t]he email described a lecture by a Hillsdale College professor scheduled at the Acton Institute; Ms. Mish is an alumnae of Hillsdale College, a fact that Ms. Mish and Mr. Zerial often discussed."  *Id.*  Neither statement is made in Complaint, nor has Ms. Mish provided an affidavit to support these contentions.[5]  Based on these assertions, Mish asserts that "the full exchange between Mr. Zerial and Ms. Mish demonstrates that 1) Mr. Zerial's email was not even directed at Ms. Mish, but rather at the Editor of the *Grand Rapids Press,* and 2) Mr. Zerial's email had nothing to do with the tax dispute, but was instead an exhortation to the newspaper that it report on a lecture the Acton Institute was scheduling."  (Def's Brief, ECF 10, PageID 154.)  Plaintiffs contest this characterization of Zerial's correspondence.  Mish clearly perceived Zerial's comment as

---

[4] The subject line of the email is important.  The offending email from Mish was titled "re: What Do Beaver Pelts and Green Energy Have in Common?" and the subject line to other relevant communications also had this same subject line, indicating that the communications were related.

[5] Nor can she, because this is a 12(b)(6) motion.  The Court may disregard facts that Mish seeks to extraneously ad to this motion.

pertaining to the Acton dispute because, when she responded to it an hour later, she brought it up.

At 12:30, Mish responded to Zerial's email and said

> [p]erhaps you should ask the Acton Insitute why they think they should be exempt from paying real property taxes?  And why they are suing the City of Grand Rapids to demand their valuable government handout of that real property tax exemption?
>
> For an institute that proclaims the below political message, it seems to me that they are entirely hypocritical in throwing an absolute hissy fit because they didn't get the government handout that they believe they are "entitled" to.  (Exhibit, ECF 11-1, PageID 450, C. Mish 3/5/2015 12:30 PM email to D. Zerial.)

Whoever the main recipient of the email was, and whatever Zerial's intent in sending it, Mish *responded to it* by bringing up the Acton dispute.  Plainly, she viewed Zerial's email as pertaining to the property tax dispute.  Mish was not done discussing the Acton dispute with Zerial at this point.

About three hours later, Mish sent Zerial another email "Re: What Do Beaver Pelts and Green Energy Have in Common?"  Mish's 3:30 PM email to Zerial said that

> I find this particularly ironic….if you scroll down on the attachment you sent me, and get to upcoming events, you see this entry:
>
> **April 29** – Acton Art Series – The Scarlet Cord – The Evils of Sex Trafficking with Pam Alderman and Elise Hilton
>
> Elise Hilton is a staff member of Acton Institute here in GR.  Her daughter, at the age of 15-16 or thereabouts, ran away from home (ran away from her "alternative" high school in downtown GR).  She wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth.  Her father talked to her on her cell phone and asked where she was / asked her to come home.  She refused to come home and refused to tell her father where she was.  The police finally found her after many days of her escapades in trading sex for drugs.
>
> And the result?  Ms. Elise Hilton the Acton hypocrite dares to sue the City of Grand Rapids, blaming the GRPD for the fact that her daughter ran away from home to become a crack and heroin whore.  Currently pending litigation.  Case No. I:13-CV-00727, assigned to Hon. Paul Maloney, U.S. District Court for the Western District of Michigan.   Apparently, Ms. Hilton the Acton hypocrite believes that the government is the cause of her family's woes.  Therefore, the government owes them a pile of money!  It must be the police department's fault, and she and her husband Ed believe they are owed money for this!

> The young woman did not run away from home to become a crack and heroin whore because of anything done by the City of Grand Rapids or the GRPD.  We did not raise her and did not influence her life choices in this regard.  The hypocrisy of the Acton Institute and its employees is simply amazing.  Beware that you are dealing with hypocrites, sir.  (Exhibit, ECF 11-1, PageID 450; Comp, ECF 1, PageID 1-16 at ¶ 22; Mish Brief, ECF 10, PageID 151.)

Mish attempts to characterize the "crack and heroin whore" email to Zerial as "expressing her personal thoughts about the Plaintiff."  (Def's Brief, ECF 10, PageID 156.)  This is a misstatement; the email contains numerous *factual statements* about EH.  As Mish is quick to point out, she did not specifically disclose EH's name in her email to Zerial.  (*Id.* at PageID 151.)  Mish did, however, identify Plaintiff Elise Hilton, "the Acton hypocrite," by name.  Mish made factual statements that Hilton's "daughter ran away from home to become a crack and heroin whore."  Mish also made the factual statement that EH "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth."  And, Mish claimed that "[h]er father talked to her on her cell phone and asked where she was / asked her to come home.  She refused to come home and refused to tell her father where she was."

These factual statements that she made to Zerial were demonstrably untruthful and inaccurate.  When she sent this email on March 5, 2015, Mish had access to the investigation file for EH's abduction.  (Comp, ECF 1, PageID 1-16 at ¶ 26.)  Evidently, she had also reviewed the pleadings in case 13-cv-727 because she referred to the case by number and recounted its allegations in the email.  She therefore knew, or had reason to know, that EH did not "run away" from the school, but was *made to leave* when the school's staff told her to leave.  She also knew that when EH called her parents they could hear her abductors on the line telling her what to say.  *Id.*  Mish's statement to Zerial that EH's father "asked her to come home" and "*she refused*" was therefore either knowingly false or made with blatant disregard to its inaccuracy.  *Id.*  Likewise, because Mish had access to EH's hospital records from the night she was found, she knew or should have known that EH's drug screen came back negative for cocaine and heroin.  (*Id.* at ¶ 27.)  Her statement, then, that

EH "whor[ed]" herself for "*heroin*, *cocaine*, alcohol and so forth" was also either knowingly false or made with reckless disregard to its untruthfulness. *Id.* Further, Mish was privy to the information in the investigation about the bottle cap found lodged in EH's cervix. (*Id.* at ¶ 28.) Her representation that EH was on an "escapade[] trading sex for drugs" therefore falsely implied that the sex she had was consensual. The particular violence of the two-inch bottle cap found in her cervix belies Mish's contention that EH was a willing participant in the acts committed towards her. *Id.* Mish would also have known that EH had, in desperation, fled into the cold Michigan January night wrapped only in a bedsheet. This, again, should have signaled to her that her characterization that EH was on a consensual "escapade" was untruthful and inaccurate. *Id.*

In sum, as of March 5, 2015 the Hilton family had a pending lawsuit against the City of Grand Rapids for civil rights violations based on the City's handling of EH's rape. The City also had a tax dispute against the Acton Institute. City Attorney Mish's office was involved in both. Mish emailed Mr. Zerial, a private community member, about the Hilton's lawsuit and the Acton dispute. In this email, Mish not only expressed her opinion that EH was a "crack and heroin whore" but she also made a series of demonstrably false and inaccurate statements about EH's supposed "whoring" that was the subject of the City's investigation.

ARGUMENT

## I.    Plaintiffs Have Stated a Valid Claim Under 42 USC §1983.

42 USC § 1983 prohibits a person acting under color of state law from depriving an individual of rights guaranteed by the constitution and laws of the United States. The statute's prohibition extends to retaliation against an individual for exercising a constitutional right. *See eg Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (Section 1983 claim based on retaliation for exercising First Amendment Rights.) In the instant, it is alleged that Ms. Mish retaliated against

Plaintiffs for exercising their First Amendment rights to seek redress of grievances in the Court,[6] their right to affiliate with the Acton institute, and their right to freedom of speech by making false and defamatory statements about their daughter's rape investigation to a member of the community in retaliation for these activities.

## A. Mish was acting under color of state law when she emailed Mr. Zerial about the Acton property tax dispute.

Mish argues that her "email was not an action taken under color of state law." (Def's Brief, ECF 10, PageID 153.)  Mish responded to Zerial's correspondence on her City of Grand Rapids email account.  She wrote Zerial and said "[p]erhaps you should ask the Acton Insitute why they think they should be exempt from paying real property taxes?" referring to the Acton property tax dispute her office was handling.  A few hours later, she wrote to Zerial again related to the same conversation, but this time she made a series of false and defamatory statements about EH's rape investigation.  Mshi claimed that EH, a mentally incapacitated rape victim, was a "crack and heroin whore" and backed it up with a series of mostly contrived and inaccurate factual statements to support this assertion.  She accused Acton and its employees of being "hypocrites."  The thought, apparently, was to sway Zerial from backing Acton by demonstrating that Acton and its people were "hypocrites" for employing someone who would bring a lawsuit on behalf of their "crack and heroin whore" of a daughter.  The question is whether Mish's emails to Zerial were sent under 'color of state law' as that term is used in Section 1983 litigation.

In *United States v. Classic*, the Supreme Court gave a definition of the "under color of state law" requirement, stating that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color of' state law.'" 313 US 299, 326 (1941).  In *West v. Atkins*, the Supreme Court said that

---

[6] And, their right to publicly criticize government which is, arguable, related to their right to sue government.  They publicly criticized Grand Rapids' handling of EH's rape by suing them over it.

"generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  487 U.S. 42, 48–50 (U.S. 1988).  As Mish herself correctly notes, the Sixth Circuit has in like fashion held that there is Section 1983 liability if the "state actor's conduct occurs in the course of performing an **actual or __apparent__** duty of his office, or [if] the conduct is such that the actor could not have behaved as he did without the authority of his office."  (Def's Brief, ECF 10, PageID 153 *citing Waters v. City of Morristown*, 242 F. 3d 353, 359 (6th Cir. 2001) (emphasis added)).  Mish's conduct was in the course of her actual, or *apparent*, duties.  And, her behavior was made possible by the authority of her office.

Mish was actually, or at least *apparently*, acting within her official duties when she drafted a response to Zerial's citizen concerns.  "[R]esponding to a private citizen's email [is not] among the job duties of the City Attorney enumerated in the City Charter" Mish points out.  (Mish Brief, ECF 10, PageID 155.)  "[R]esponding to Mr. Zerial's promotion of the Acton Institute or responding to his 'concerns' about the tax dispute" did not "fall within Ms. Mish's job duties as the City Attorney." *Id.*  This is not correct.  As Mish herself acknowledges, her duties included "investigating citizen complaints about the City's misapplication or misuse of funds, abuse of its corporate powers, or failure to perform duties required by law."  (Mish Brief, ECF 10, PageID 184 (quoting ECF 10-2, City Charter § 93.))  Zerial had, through his advocacy, claimed that the City had abused its powers by refusing Acton's rightful request for a tax exemption.  And, he had alleged that it had failed to perform duties required by law by refusing to acknowledge their tax exempt status.  Investigating such a complaint by a citizen, all parties seem to concede, would be within Mish's duties.  "Responding to emails by private citizens" may not be an explicitly delineated function of the City Attorneybut an *apparent* duty that would go along with the duty to investigate citizens' complaints would be *responding* to citizen's complaints.  If not to provide a response to the citizen, what would be the sense of *investigating* their complaint to begin with?  It bears noting that neither Mish nor the

9

City of Grand Rapids have pointed to any individual, apart from Mish and her staff, who would have *responded* to citizen complaints that her office investigates.  Nor is such an individual indicated in any of the voluminous documents the City and Mish have filed.  Plainly, *response* to a citizen complaint is an implied component of the duty to investigate.  That would ultimately be Mish's responsibility.

Defendant Mish implies that Plaintiffs have pled that "[r]esponding to emails by private citizens is not among the duties Plaintiff's allege are the responsibility of the City Attorney."  (Brief, ECF 10, PageID 155 *citing* Complaint, ECF 1, ¶ 53.)  Plaintiffs never, at any point in their Complaint, affirmed that responding to emails by private citizens is outside of the City Attorney's duties.  Plaintiffs, in fact, argue that emailing private citizens about their complaints is inherent in the City Attorney's duties to investigate citizen complaints.  What is the sense of an investigation of complaints, if no response to the complaining citizen is ever provided?

Mish was actually, or *apparently*, acting in her official duties when she made statements to an advocate community member designed to influence his perception of the Acton property tax dispute.  As of March 5, 2015, the City Attorney's office was representing the City against Acton in the dispute before the Michigan Tax Tribunal.  Mr. Zerial, a community member advocating on Acton's behalf, had emailed members of the media.  (Exhibit, ECF 11-1, PageID 450.)  Mish viewed this correspondence as relating to the Acton property dispute because she wrote Zerial back an hour later in response and said "[p]erhaps you should ask the Acton Institute why they think they should be exempt from paying real property taxes?"  *Id.*  Three hours later she tried another tact: emailing Zerial to and arguing that Acton were a bunch of "hypocrites" for employing Hilton who had sued the City on behalf of her "crack and heroin whore" of a daughter.  *Id.*  Mish's actions may fairly be described as advancing the City's position in the pending property tax dispute.  Trial publicity and media involvement is unequivocally a portion of the lawyer's duties towards his client which is why

such activities are governed by the Rules of Professional Conduct.  (*See, generally,* MRPC 3.6.)  Mish's email to Zerial discussing the dispute, and attempting to sway his support for Acton by casting Acton and its employees as "hypocrites," then may fairly be characterized as an action in furtherance of the City's argument that Acton was not entitled to property tax exemptions which she as City Attorney was advancing.

Mish argues that there is not "any indication that Ms. Mish was invoking her status or authority as the City Attorney in sharing her thoughts about the Plaintiffs with Mr. Zerial."  (Def's Brief, ECF 10, PageID 156.)  This is entirely inaccurate.  As City Attorney, Mish had access to EH's investigation file that a private citizen would not.  This access, combined with her position as City Attorney, gave credence and weight to the statements about the investigation that a private citizens may not have had.  A private citizen, for instance, may have opined that EH was on an "escapade" as a "crack and heroin whore."  However, a private citizen would not have had *access to the investigation file* and, therefore, these statements would have been more easily dismissed.  When City Attorney Mish asserted, falsely, that EH had "run away" from the school, or that her father had told her to come home and she "refused," these statements would be more credible coming from the City Attorney than coming from someone off the street.  Likewise, when City Attorney Mish asserted that EH had "wandered the streets of downtown Grand Rapids, acting as a prostitute for heroin, cocaine, alcohol and the like[7]" an average person would be more likely to believe this statement as true, given the source.  Mish may have been acting like a common loudmouth when she made these statements.  But, she was clad in the authority and respectability of the office she held.  The fallacious statements Mish made about EH were given weight and credibility because she was the City Attorney.  Mish abused her position as City Attorney to make false and defamatory statements about EH, a minor and a victim of sexual assault.

---

[7] Despite the *complete absence* of heroin or cocaine in EH's post-rape chemical test to which Mish had access.

In summary, Mish's duties as the City Attorney for the City of Grand Rapids included investigating (and, presumably, responding to) citizen complaints. Her duties also involved representing the City in litigation. The City Attorney's office, in fact, *was* representing the City in litigation related to the Acton Institute's property tax dispute. By her comments, in sending the email to Zerial, Mish seemed to believe she was responding to a citizen concern about the city's handling of the Acton situation. And, in writing Zerial about the Acton dispute, she was advancing the City's interests related to the pending litigation by attempting to discourage Zerial from continuing to offer his public support to Acton. The email was sent from Mish's City of Grand Rapids email account. And, the email contained references to information, (or, at least, the untruthful implication of information) that she had access to solely because of her position as the City attorney. In sending this email, Mish was acting under color of state law.

## B. Mish is not Entitled to Qualified Immunity

With "qualified immunity," government employees may avoid liability under Section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Def's Brief, ECF 10, PageID 157 *quoting Henry v. Metro Sewer Dist.,* 922 F.2d 332, 339 (6th Cir. 1990)). When the defense of qualified immunity is asserted, the complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) *quoting Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir.1995). Mish violated Plaintiff's constitutional rights through her conduct and these rights were clearly established when she did so. She is not entitled to qualified immunity for her actions.

### 1. Plaintiffs have stated a claim of constitutional violations.

In order to state a claim of First Amendment Retaliation pursuant to Section 1983, Plaintiffs must show that (1) [they] engaged in protected conduct; (2) an adverse action was taken against

[them] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two[.]" *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Mish argues that Plaintiffs have failed to demonstrate a constitutional violation because her behavior was not an "adverse action" in this context. Mish claims that calling EH, a rape victim, a "crack and heroin whore" was not "specific harm" to the Plaintiffs. And, she argues that a government official's making false and defamatory statements about the details of her rape would not have deterred the Plaintiffs from further first amendment activities.

    **a.  Mish's conduct was an "adverse action."**

Mish sent an email to Zerial, a private citizen, that contained numerous false, inaccurate, and defamatory statements about Plaintiff EH's rape. Mish claims that this was not an "adverse action" sufficient to satisfy the second element of a Section 1983 claim. This is incorrect; the Sixth Circuit has held that a government official's defamation of a *private citizen* is an "adverse action." And, the Sixth Circuit has held that a government officials' release of sensitive information about a rape investigation may be an "adverse action." Mish did both.

In *Bloch v. Ribar,* 156 F.3d 673 (6th Cir. 1998) the Sixth Circuit considered a case quite similar to the instant. Cynthia Bloch, the plaintiff, reported that she had been raped to the county sheriff. She was dissatisfied with the handling of the investigation and gave a press interview criticizing the sheriff's office. In response Ribar, the Sheriff, gave a press conference where he called for a grand jury investigation against Bloch and he released "highly personal and extremely humiliating details of the rape suffered by Ms. Bloch." *Id.* Bloch sued Ribar for First Amendment retaliation under § 1983.

Ribar sought refuge under the qualified immunity doctrine. He argued, inter alia, that his release of the information about Bloch's rape was not an "adverse action." The Sixth Circuit disagreed, and after a lengthy analysis held that "Ribar's adverse action caused [the plaintiffs] to

suffer an injury that would chill people of ordinary firmness from continuing to engage in their constitutionally protected activity." *Id.* at 681.  The Sixth Circuit has fairly recently characterized the *Bloch* holding as "**finding adverse action where [the] defendant publicly released irrelevant, humiliating, and confidential information concerning the private details of a rape.**" *McComas v. Board of Educ.,* 422 Fed.Appx. 462, 469 (6th Cir. 2011) (citing *Bloch* with approval) (emphasis added).  In the Sixth Circuit, after *Bloch* and *McComas,* it is well settled that a public officials' release of irrelevant, humiliating, and confidential information concerning the private details of a rape is an "adverse action."  Mish did just that by telling Zerial that EH had "ran away from home" and "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth."

Ignoring *Bloch* for a moment, the Sixth Circuit has also held that a public officials' defaming a private individual is an "adverse action.'  Defendant Mish cites the Sixth Circuit's decision in *Fritz v. Charter Twp. Of Comstock*, and then proceeds to ignore it entirely.  (Brief, ECF 10, PageID 157 *citing Fritz,* 592 F.3d 718 (6th Cir. 2010)).  Had she read *Fritz,* she would have seen that the Sixth Circuit has held that a lower standard of "adverse action" applies to first amendment retaliation claims by *private individuals* than to similar claims by governmental employees and prisoners.  And, she would have noted that *Fritz* particularly held that a governmental entity's making defamatory statements against a *private individual* would satisfy the adverse action element of the *Thaddeus-X* analysis.  Plaintiffs incorporate by reference the more detailed discussion of the *Fritz* decision from their response in opposition to the City's motion to dismiss, ECF 11 at PageID 433-435.  In *Wurzelbacher v. Jones-Kelley,* the Sixth Circuit cited *Fritz* for the proposition that defamation by a governmental entity against a private individual could satisfy the "adverse action" element of a first amendment retaliation claim.  675 F.3d 580, 583-84 (6th Cir. 2012).  Plaintiffs incorporate the more detailed discussion of *Wurzelbacher* from their brief in opposition to Defendant Grand Rapids' motion to

14

dismiss.  (Pls' Brief, ECF 11, PageID 437.)  *Fritz* and *Wurzelbacher* stand for the proposition that, in the Sixth Circuit at least, a government official's making defamatory statements against a private individual may satisfy the "adverse action" prong of a first amendment retaliation claim under the *Thaddeus-X* analysis.

*Fritz'* holding, with respect to defamation as an adverse action, accords with earlier decisions of the Sixth Circuit.  In *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) a judge issued press statements that falsely accused a lawyer of "stalking" her, in retaliation for criticisms the lawyer had made of her.  On these facts, the case survived an early motion to dismiss based on qualified immunity.  The Sixth Circuit quoted this holding, with approval, in *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999).  Under *Barrett*, when a government official falsely accusing an individual of criminal activity (stalking) this may be an "adverse action" in a section 1983 claim.

Mish's statements differ significantly from the comments at issue in *Taylor v. City of Falmouth*, one of the cases Mish relies on.  (Brief, ECF 10, PageID 157-58, *citing Taylor*, 187 Fed.App'x 596, 598 (6th Cir. 2006)).  In *Taylor*, the city official called the private citizen a "big black bastard" and invited him to "step outside."  There was no indication that the city official made any factual statements about the plaintiff.  Further, *Taylor* was not published and it was decided pre-*Fritz*.  Taylor, in fact, stated the standard for adverse action as "whether a *public official* of ordinary firmness would be deterred from exercising First Amendment rights."  *Id.* at 600.  *Fritz'* later holding, therefore, supersedes *Taylor* for purposes of this dispute.

Mish relies on *Atlanta Cmty. Sch v. Alpena-Montmorency-Alcona Educ. Serv. Dist.*, a 2012 decision from the Eastern District of Michigan for the proposition that "disparaging public statements about plaintiff [are] not an adverse action for purposes of a First Amendment retaliation claim."  (Brief, ECF 10, PageID 158-59.)  This case reconciles with *Fritz* because it involved a supposedly disparaging statement about a *School District*, not a *private individual*.  A school district, as a public

body, would not be entitled to the lower standard of "adverse action" that applies to private individuals' First Amendment retaliation claims.

The remaining cases Mish cites, *X-men Sec. Inc. v. Pataki*,[8] *Colson v. Grohman*,[9] *Suarez Corp. Indus. V. McGraw*,[10] and *Bondar v. D'Amato*[11] were all decided pre-*Fritz*. And, they are all from outside of the Sixth Circuit. To the extent that they oppose *Fritz'* holding, *Fritz* reasoning again supersedes. *Fritz*, a 2010 published decision of the Sixth Circuit is binding upon the dispute at bar; a series of pre-2010, out-of-circuit decisions are not.

The Hiltons are private individuals and not governmental employees. Plaintiff EH is a mentally disabled girl, and a rape victim. The lower standard of "adverse action" from *Fritz* applies to the Hiltons' claim. When Mish emailed Zerial, not only did she engage in name calling, referring to EH as a "crack and heroin whore[12]" and to Plaintiff Elise Hilton as the "Acton hypocrite," she also made specific factual statements to Zerial. She claimed, falsely, that EH "refused to come home and refused to tell her father where she was." (Exhibit, ECF 11-1, PageID 450; Brief, ECF 10, PageID151.) She told Zerial, again falsely, that EH "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth." *Id.* These false statements satisfy *Fritz'* and *Barrett's* definition of adverse action because they represent defamation by the government against a private individual. And, they satisfy *Bloch's* formulation because they are, at best, intimate and private details about a rape investigation.

**b. Mish's actions caused Plaintiffs to suffer "specific harm."**

---

[8] 196 F.3d 56 (2d Cir. 1999)

[9] 174 F.3d 498 (5th Cir. 1999)

[10] 202 F.3d 676 (4th Cir. 2000)

[11] 2007 WL 1700114 (E.D. Wis. June 11, 2007)

[12] Michigan Law views such statements as particularly heinous. Under Michigan's defamation statute, "[w]ords imputing a lack of chastity to any female or male" are per se defamatory, meaning that they are actionable absent any showing of special harm. MCL § 600.2911(1); *accord Burden v. Elias Bros. Big Boy Restaurants*, 613 N.W.2d 378, 382 (Mich.App. 2000).

Mish argues that when she claimed EH had acted as a "crack and heroin whore," and provided information to Mr. Zerial about the details of her rape, the damage she caused the Hiltons was "inconsequential." (Mish Brief, ECF 10, PageID 160-162.) She argues, then, that they cannot pursue a Section 1983 claim for this "inconsequential" violation of their rights. *Id.* Mish is far off base to assert that her actions were "inconsequential."

The Sixth Circuit considered, and rejected, a similar argument in *Bloch,* 156 F.3d at 679. In that case, as here, Sheriff Ribar argued that the injury caused by his release of information about Mrs. Bloch's rape was insufficient to state a claim because "the injury in a retaliation case must be more than a claim of simple embarrassment or humiliation." *Id.* Because Mrs. Bloch had not alleged a "specific, visible injury or harm" and her damages were "solely embarrassment, humiliation, and emotional distress" Ribar argued that her Section 1983 claim failed. *Id.* The Sixth Circuit expressly rejected this argument. In doing so, the Court adopted holdings from other circuits that found that "[i]t is well established that damages are recoverable under 42 U.S.C. section 1983 for emotional distress caused by due process violations" and that a plaintiff had pled "actual injury" where "a reasonable jury could credit plaintiff's testimony as to the personal anguish she suffered as a result of the adverse action taken by the defendants." *Id.* at 680. The Court therefore "conclude[d] that the Blochs' allegation of injury based on embarrassment, humiliation, and emotional distress is sufficient to be actionable under § 1983." *Id.* at 679-80.

*Bloch* unequivocally held that embarrassment, humiliation, and emotional distress *are* sufficient damages to be actionable under Section 1983. Through its adoption of the out-of-circuit authority, *Bloch* also established that a plaintiff may demonstrate this actual injury through his or her own testimony as to the personal anguish she suffered as a result of the defendants' adverse action. And, right on point to the instant, *Bloch* held that when a governmental official releases embarrassing information about a rape in retaliation for exercising their First Amendment rights, the victim and

17

the victim's family may maintain a claim based on their embarrassment, humiliation, and emotional distress under Section 1983.

Mish relies upon *Wurzelbacher v. Jones-Kelley*,[13] *Mezibov v. Allen*,[14] *McComas v. Bd. Of Education*,[15] and *Mattox v. City of Forest Par*[16] in support of her proposition that her statements that EH was a "crack and heroin whore" were too "inconsequential" to merit the court's action. (Mish Brief, ECF 10, PageID 160.) Her reliance on these cases is misplaced.

The Plaintiffs in *Mattox* were, respectively, a former city council member and a former firefighter. They were both *public employees* and, therefore, would not be entitled to the lower standard of adverse action that applies to private individuals under *Fritz*. The *Mattox* plaintiffs alleged that they suffered embarrassment when the contents of a criminal investigation were made public. But, there is no indication that the report recounted any details of a *rape investigation* or *criminal activity* of any of the plaintiffs. In finding that the plaintiff's claims did not rise to the level required of an adverse action in a constitutional claim, the Court specifically differentiated from such a situation by saying "[w]ithout minimizing the embarrassment [plaintiff] may have suffered, the revelations at issue in this case do not rise to the level of those in *Bloch* or *Barrett*." *Mattox,* 183 F.3d at 523. *Mattox* did not involve false allegations of criminal activity, nor revelation of details of a rape. Mish's statements implied EH had engaged in criminal activity, and revealed embarrassing details about her rape investigation. *Mattox'* holding is therefore inapplicable.

*Mezibov* was decided a full five years before *Fritz*, so it did not have the benefit of the Court's later direction as to the standard to apply to First Amendment Retaliation claims brought by *individuals* as opposed to state workers and prisoners. Further, *Mezibov* was a claim by an *attorney* alleging that he was retaliated against for making statements in court. The decision squares with

---

[13] 675 F.3d 580 (6th Cir. 2012)

[14] 411 F.3d 712, 722 (6th Cir. 2005)

[15] 422 F.App'x 462, 469 (6th Cir. 2011).

[16] 183 F.3d 515, 523 (6th Cir. 1999)

*Fritz*. *Fritz* told the courts to apply a lower threshold of "adverse action" to private individuals than they normally would to government workers and prisoners because those people should be used to more hassle.  Attorneys, generally, are subject to sanctions, censure from the judge, *ad hominem* attacks by their opponents, and a litany of potential criticisms from the public for statements in court.  The profession is definitely not for the thin skinned or the faint of heart.  The court may not have had *Fritz* to guide it when it wrote *Mezibov b*ut, in light of the facts of life a a litigator, it seems unlikely that the court would have applied the lower threshold of "adverse action" that it did to private individuals' claims.

*Wurzelbacher* is more helpful to Plaintiffs than to Mish because it left open the possibility that governmental defamation, and release of intimate or embarrassing facts, could be considered "adverse action."  Mr. Wurzelbacher brought a First Amendment retaliation claim because the "defendants, without [the plaintiff's] knowledge, performed several improper database searches under his name." *Wurzelbacher*, 675 F.3d at 583-584.  The Court particularly differentiated from the facts of *Fritz* and *Bloch* by noting that Mr. Wurzelbacher was "**not defamed**" and "**did not suffer the public disclosure of intimate or embarrassing information**" as a result of the defendants' database search.  (*Id,* particularly differentiating from *Fritz* and *Bloch*.)  *Wurzelbacher* therefore explicitly left open the possibility that if a private individual **was defamed** or **did suffer public disclosure of intimate or embarrassing information** then it could be considered an "adverse action."  Because the Hiltons *were* defamed and *did* suffer the public disclosure of intimate or embarrassing information, their claim is not barred by *Wurzelbacher's* reasoning.

The particular severity of Mish's statements differentiates the claim at bar from the circumstance in the last case she relies upon, *McComas v. Bd. Of Education*,[17] an unpublished decision from the Sixth Circuit from 2011.  (Mish Brief, ECF 10, PageID 161.)  In *McComas*, the court held

---

[17] 422 F.App'x 462, 469 (6th Cir. 2011).

that a statement by a school superintendent that the plaintiff was an "aggressor" in a fight was "not sufficiently embarrassing to constitute an adverse action."   The *McComas* court particularly differentiated this statement that the plaintiff was the "aggressor" from the situation in *Bloch*  where, noted the court, the Sixth Circuit "f[ound an] adverse action where [the] defendant publicly release 'irrelevant, humiliating, and confidential information' concerning 'the private details of [a] rape.'" *McComas,* 422 Fed.Appx. at 469 (citing *Bloch v. Ribar* with approval.)   Even after *McComas*, Mish's release of the irrelevant and humiliating details of EH's rape is an adverse action.

*Bloch* stands for the proposition that when a governmental official releases sensitive and private information, particularly the contents of a rape investigation, their resulting emotional pain, distress, and personal anguish is an "adverse action" under 42 USC § 1983.  *Barrett* tells us that a government's false assertion of criminal activity is an "adverse action."  As demonstrated above, the Sixth Circuit has revisited *Bloch* and *Barrett* on several occasions, but has left these holdings intact. Nearly every one of the cases Defendant relies upon, in fact, considered *Bloch* and/or *Barrett* and found an absence of an adverse action only by differentiating from those cases.  Here, Defendant Mish made false and defamatory statements to Mr. Zerial about EH's rape investigation.  She claimed that EH had "run away" to act as a "crack and heroin whore" and that she "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth."  Mish also asserted that "her father talked to her on her cell phone and … asked her to come home" but she "refused to come home and refused to tell her father where she was." Contrary to Mish's assertion, these factual statements were *not* contained in Plaintiff's statements in the Complaint in the prior action against the City.  As in *Bloch,* the humiliation, embarrassment, and personal anguish the Hilton's suffered as a result of City Attorney Mish's wrongful release of this embarrassing information is a "specific harm" sufficient to support their Section 1983 claim.

    c.  **Mish's defamation of EH, assertion of EH's unlawful conduct, and revelation of embarrassing details of EH's rape investigation would deter further action.**

Mish argues, relying on *Mezibov* and *Wurzelbacher,* that the statements she made to Zerial would not deter a person from engaging in First Amendment activity.  (Mish Brief, ECF 10, PageID 162-63.)  Mish forgets that "since there is no justification for harassing people for exercising their constitutional rights, the effect on freedom of speech need not be great in order to be actionable." *Thaddeus-X,* 175 F.3d at 397.  In *Bloch,* the Sixth Circuit considered a similar argument to Mish's and particularly held that "Ribar's adverse action caused them to suffer an injury that would chill people of ordinary firmness from continuing to engage in their constitutionally protected activity."  *Bloch*, 156 F.3d at 681.  In *Barret,* the Court found that a judge's false assertion of stalking would deter further action.  Applying *Bloch* and *Barrett*, Mish's statements that during her period of abduction EH was acting as a "crack and heroin whore" and her remaining factual assertions was sufficient to chill First Amendment conduct.  As stated previously, *Mezibov* and *Wurzelbacher* do not compel a different result because the facts of *Bloch* are more analogous to the instant case.

## 2. Mish Violated Plaintiffs' Clearly Established Constitutional Rights

Mish's analysis of whether the right she violated was "clearly established," as that term is defined in Section 1983 jurisprudence, is woefully deficient.  (Mish Brief, ECT 10, PageID 163-166.)  Qualified immunity protects government officials performing discretionary "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The Sixth Circuit has, fairly recently,collected cases on the "clearly established" element and stated that

> [f]or a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.  So the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.  **We need not find a case in which the very action in question has previously been held unlawful**, but, in the light of pre-existing law, the unlawfulness must be apparent.  To evaluate the contours of the right, we must look first to decisions of

the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits. But we need not find a decision on all fours. **Outrageous conduct will obviously be unconstitutional without regard to precedent because the easiest cases don't even arise**.

*Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 684 (6th Cir. 2013) (internal citations and quotations omitted, emphasis added).

In claims alleging retaliation, the Sixth Circuit has applied a two-step analysis to the "clearly established" question. *Bloch*, 156 F.3d at 678. First, it evaluates whether the right that the Plaintiff's exercised was "clearly established." *Id.* Second, it determines whether the government officials acted in retaliation for the exercise of the clearly established right. *Id.* In *Bloch*, the Sixth Circuit applied this analysis to facts very similar to the instant as follows:

> Ribar is not entitled to qualified immunity from the Blochs' retaliation claim because the right to criticize public officials is clearly established, the Blochs have alleged that they suffered embarrassment and humiliation that would chill people of ordinary firmness from continuing to exercise their constitutional rights as a result, and they claim that the release of the highly personal information was motivated at least in part as a response to the exercise of those rights. *Bloch*, 156 F.3d at 683.

The right to seek redress of grievances before the Court is clearly established. In *BE & K Const. v. N.L.R.B.,* 536 US 516 (2002) the United States Supreme Court noted that the First Amendment affords "the right of the people to petition the Government for redress of grievances" and noted that "we have recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights." *Id.* at 524-25. EH had a well established right to seek redress of her grievance against the City of Grand Rapids. Mish's email, on its face, demonstrates retaliation for Elise Hilton's filing of the lawsuit; she mentions it explicitly.

The right to criticize public officials is "clearly established." *Bloch* unequivocally stated that "the right to criticize public officials is clearly established." *Id.* at 683. Arguably, this could be viewed as a subset of the right to seek redress of grievances against the City of Grand Rapids. The Hiltons certainly publicly criticized the City's handling of their daughter's rape by suing them over it. If the Court finds that the pleadings are deficient in this respect Plaintiffs would request the

opportunity to amend to state a claim for retaliation for exercising their First Amendment right to criticize the government by working for Acton and filing their suit.

Free association is well established. The Supreme Court has held that there is a constitutionally guaranteed right to free association. *See, eg NAACP v. Alabama*, 357 US 449, 460 (1958). Therefore, Hilton's right to affiliate with the Acton Institute, a political advocacy organization, was clearly established. Mish referred to her personally in the email several times as the "Acton hypocrite" which, on its face, shows retaliatory animus for her affiliation.

The fact that the right to freedom of speech is well established is not subject to any sensible debate. Hilton, therefore, had a right to put on the presentation "The Scarlet Cord – the Evils of Sex Trafficking." Mish referred to her involvement in this presentation, right before telling Zerial all about EH's "escapade" as a "crack and heroin whore." On the face of her email to Zerial, Mish retaliated against Hilton for engaging in freedom of speech.

The right to be free from retaliation for exercising a clearly established constitutional right is itself clearly established. In *Bloch*, the Sixth Circuit rejected Sheriff Ribar's argument that releasing the details of Mrs. Bloch's rape did not violate a clearly established right. The Sixth Circuit noted that "***it is well-established that a public official's retaliation against an individual for exercising his or her First Amendment rights is a violation of § 1983.***" *Bloch,* 156 F.3d at 682 (citing *Barret,* 130 F.3d 246.) On its face, Mish's email retaliated against the Hiltons for exercising their rights.

Defendants rely upon *Saylor v. Bd. Of Educ.,* 118 F.3d 507, 515 (6th Cir. 1997) for the proposition that Plaintiff must identify a case that shows that "official's ***particular*** actions in the ***particular*** situation" violated the rights in question." *Saylor* did not deal with *retaliation* for exercise of a right, and so was inalogous. In *Saylor*, a teacher paddled a student in violation of school rules. The court's analysis centered on whether it was clearly established that an educator's violating school

rules stated a constitutional violation.  In surveying cases, there was nothing from the Sixth Circuit that this was so and, in fact, a case from the Fifth Circuit that held that it was not.  The Sixth Circuit reasoned that "[i]f the United States Court of Appeals for the Fifth Circuit is unable to equate a regulatory violation with a constitutional violation in this factual context, we are at a loss to see how an eighth-grade school teacher could be expected to do so."  *Id.* at 516.  The case did not consider whether the teacher had paddled the student in *retaliation* for exercising any rights and, therefore, it adds nothing to the discussion of a First Amendment claim.

After *Bloch,* one would think a government official would not expect to get away with releasing embarrassing details about a rape investigation to punish a citizen for criticizing their handling of the rape.  Ignoring *Bloch,* the Hiltons had a clearly established right to file lawsuits, criticize their government, engage in free speech, associate with the Acton institute and, most important, not to be retaliated against for doing so.  Caselaw shows Mish should have known better.  Therefore, she is not entitled to qualified immunity for her actions.

**II.    Plaintiffs Have Stated a Valid Claim of Intentional Infliction of Emotional Distress.**

Catherine Mish, the City Attorney for the City of Grand Rapids, corresponded with a private citizen about Plaintiff EH.  She told him that EH had "run away from home" and that she "wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth."  Mish went so far as to describe EH, the victim of a brutal sex crime, as a "crack and heroin whore."  Mish's argument that Plaintiffs "have not alleged facts showing that [her] statements were extreme and outrageous" is, quite frankly, unconscionable.  A person of even modest empathy and intelligence would anticipate that such a statement about a sexual assault victim would cause her, and her family, extreme emotional distress. Therefore, there was at least extreme recklessness on her part, if not intent.  Plaintiffs' allegations that they suffered extreme emotional distress when they learned that the City Attorney for the City of Grand Rapids had personally made

Case 1:16-cv-00702-GJQ-ESC   ECF No. 13 filed 09/16/16   PageID.490   Page 31 of 32

defamatory statements about their daughter's rape investigation are likely and credible. Defendant

Mish has stated no cognizable reason why Plaintiffs' IIED claim should be dismissed.

**III.    Hon. Malloney Has Already Ruled in the Prior Matter that Plaintiff EH may Prosecute the Claim Under a Pseudonym.   The doctrine of collateral estoppel prevents relitigation of this ruling in the instant claim.   There is no basis for dismissal under Rule 10.**

Ed and Elise Hilton moved the Kent County Probate Court for Letters of Guardianship for

EH because she is an individual with a Developmental Disability. The Court granted this motion.

(WD MI Case No. 13-cv-727, Exhibit, ECF 60-1, PageID 919-22.)   Likewise, the Kent County

Probate Court GRANTED Plaintiffs Ed and Elise Hilton authority to act on EH's behalf in legal

proceedings. (WD MI Case No. 13-cv-727, Exhibit, ECF 60-2, PageID 923.)   The Hiltons properly

moved the court to allow them to proceed in 13-cv-727 with Plaintiff EH identified in the caption

by her initials as a "developmentally disabled adult" on July 22, 2015. (WD MI Case No. 13-cv-727,

Motion, ECF 60, PageID 917-18.)   Hon Maloney GRANTED EH's motion to proceed under the

moniker "EH" on July 27, 2015. (WD MI Case No. 13-cv-727, Order, ECF 64, PageID 941-42.)

The City of Grand Rapids was involved in the case at the time; they were not dismissed until March

24, 2015. (WD MI Case No. 13-cv-727, Order, ECF 69, PageID 982-994.)   Collateral estoppel

applies to prevent relitigation of an act or issue previously decided in an action between the parties

to a lawsuit or persons *in privity* with them. *Scherer v. Wiles*, 2016 WL 4655738 (6th Cir. 2016). Mish,

the City Attorney, was in privity with the City of Grand Rapids in 13-cv-727.   The Court concluded

that EH may proceed as a plaintiff under a pseudonym due to her incapacity.   Mish may not

relitigate this issue in the instant case by application of the doctrine of collateral estoppel.

CONCLUSION

For the reasons stated herein, the Court should DENY Defendant Mish's Motion to

Dismiss in its entirety.

SIGNATURE

Respectfully Submitted,

Dated: 9/16/2016                    /s/ Collin H. Nyeholt
                                   Collin H. Nyeholt (P74132)
                                   Fixel & Nyeholt, PLLC
                                   Attorneys for the Plaintiffs
                                   4084 Okemos Road, Suite B
                                   Okemos, MI 48864
                                   (517) 332-3390
                                   cnyeholt@fixellawoffices.com

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify, under penalty of perjury, that on today's date I served the attached document on the court and all parties of record via the Court's ECF system

Dated:  9/16/2016                    /s/ Collin H. Nyeholt
                                   Collin H. Nyeholt

a