UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ELISE HILTON and ED HILTON,
as individuals and as next friends
for "EH," a mentally disabled adult,

    Plaintiffs,

v.

CATHERINE MISH and
THE CITY OF GRAND RAPIDS,

    Defendants.

                              /

Case No. 1:16-CV-702

HON. GORDON J. QUIST

## **OPINION**

       Plaintiffs, Elise Hilton and Ed Hilton, individually, and as next friends of "EH," a mentally disabled adult, filed a complaint against Defendants, Catherine Mish and the City of Grand Rapids, alleging claims under 42 U.S.C. § 1983 for retaliation based on the Hiltons' and EH's exercise of their First Amendment rights to redress of grievances, freedom of speech, and association, and a state-law claim for intentional infliction of emotional distress.  All of the Hiltons' claims arise out of an email that Mish—the former City Attorney for the City of Grand Rapids—sent from her work email at the City to an individual concerning the Hiltons and EH's involvement in an incident that formed the basis of a separate, previous lawsuit filed in this district against the City and parties.

       The City and Mish have moved to dismiss the Hiltons' claims for failure to state a claim. The Hiltons filed a response, and the Court heard oral argument on December 1, 2016.

       For the reasons set forth below, the Court will grant Defendants' motions and dismiss the complaint with prejudice.

# I. BACKGROUND

## A. The Parties

The Hiltons are husband and wife, and EH is their developmentally-disabled adult daughter. The Hiltons are EH's guardians. At the time of the incidents set forth in the complaint, EH was a minor. (ECF No. 1 at Page ID.2.) Also during the relevant period, Elise Hilton was employed by the Acton Institute, a political think tank and advocacy group located in the City. Among other things, the Acton Institute presents seminars that concern religion and economics and related topics. (*Id.* at PageID.5.) In 2014, the Acton Institute applied to the City for real and personal property tax exemptions. Although the City initially denied the request, the parties eventually entered into a consent judgment. (*Id.*)

The City is a Michigan municipal corporation and, during the relevant period of time, Mish was the City Attorney. Mish's duties as City Attorney included:

- Acting as the legal advisor for the City and its various bodies;
- Litigating cases for the City and its bodies;
- Reviewing all contracts, bonds and other instruments for the City and its bodies;
- Issuing legal opinions when requested to do so by any of the City's bodies and officials;
- Maintaining copies of all franchises granted the City and all contracts and agreements entered into by the City; and
- Investigating citizen complaints concerning, among other things, misapplication of the City's funds.

(ECF No. 9-3 at Page ID.87–88 (City Charter).)

## B. The Prior Lawsuit

On January 16, 2012, EH was a minor and a student at Hope Academy in Grand Rapids. That day, EH was disruptive at school and was told to leave school. After EH left the school, a stranger induced EH to enter his house. Over the next several days, EH was repeatedly raped by the

2

stranger and other men. At some point the abductors took EH's clothes. EH eventually escaped in a bed sheet and was later found in an abandoned building wrapped in the sheet. EH was then taken to the YWCA, and later to a hospital. (*Id.* at PageID.4.) Several days later, a detective with the Grand Rapids Police Department (GRPD) interviewed EH and concluded that her story did not make sense. The detective thought that EH would not make a good witness. The GRPD declined to investigate further, and the prosecutor declined to file charges against anyone. Although the GRPD knew the name of one of the abductors and his address, the GRPD did not interview him for ten months. (*Id.*)

On July 8, 2013, the Hiltons, individually and on behalf of EH, filed a complaint in the Western District of Michigan against the GRPD and others. The Hiltons alleged a gross negligence/failure to train claim against the GRPD. The case, captioned *Elise Hilton et al. v. Grand Rapids Police Department, et al.*, No. 1:13-CV-727, was assigned to Judge Paul Maloney. The Hiltons subsequently filed a second amended complaint against the City, two GRPD employees, and others, in which they alleged various constitutional violations against the City and the GRPD employees. On March 24, 2016, Judge Maloney granted the City's and the GRPD employees' motion to dismiss.

**C.    Mish's Email**

On March 5, 2015, Donald Zerial, a Grand Rapids lawyer who supported the Acton Institute in its tax dispute with the City, sent an email to Julie Hoogland, the Editor of the *Grand Rapids Press*, stating:

> I think it would be a worth-while investment for the Grand Rapids Press and Mlive to make on behalf of the West Michigan community to have a reporter attending these meetings and do a Press review for all of your faithful readers.

3

(ECF No. 10-7 at PageID.315.)  Zerial attached an advertisement for an upcoming March 25, 2015 lecture at the Acton Institute.  (*Id.* at Page ID316–17.)  The advertisement also promoted other upcoming Acton Institute events, including an April 29 event, "The Scarlet Cord - The Evils of Sex Trafficking with Pam Alderman and Elise Hilton."  (*Id.* at PageID.317–18.)  Mish was apparently copied on the email at her City email address.  About an hour later, Mish responded to Zerial:

> Perhaps you should ask the Acton Institute why they think they should be exempt from paying real property taxes?  And why are they suing the City of Grand Rapids to demand their valuable government handout of that real property tax exemption?
>
> For an institute that proclaims the below political message, it seems to me that they are entirely hypocritical in throwing an absolute hissy fit because they didn't get the government handout that they believe they are "entitled" to.

(ECF No. 11-1 at PageID.449.)  A few hours later, Mish sent Zerial another email:

> I find this particularly ironic. . . .if you scroll down on the attachment you sent me, and get to upcoming events, you see this entry:
>
> **April 29**–Acton Art Series–The Scarlet Cord - The Evils of Sex Trafficking with Pam Alderman and Elise Hilton
>
> Elise Hilton is a staff member of Acton Institute here in GR.  Her daughter, at the age of 15-16 or thereabouts, ran away from home (ran away from her "alternative" high school in downtown GR).  She wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth.  Her father talked to her on her cell phone and asked where she was / asked her to come home.  She refused to come home and refused to tell her father where she was.  The police finally found her after many days of her escapades in trading sex for drugs.
>
> And the result?  Ms Elise Hilton the Acton hypocrite dares to sue the City of Grand Rapids blaming the GRPD for the fact that her daughter ran away from home to become a crack and heroin whore.  Currently pending litigation. Case No. 1:13-CV-00727, assigned to the Hon. Paul Maloney, U.S. District Court for the Western District of Michigan.  Apparently, Ms. Hilton the Acton hypocrite believes that the government is the cause of her family's woes.  Therefore, the government owes them a pile of money!  It must be the police department's fault, and she and her husband Ed believe they are owed money for this!

> The young woman did not run away from home to become a crack and heroin whore because of anything done by the City of Grand Rapids or the GRPD. We did not raise her and did not influence her life choices in this regard. The hypocrisy of the Acton Institute and its employees is simply amazing. Beware that you are dealing with hypocrites, sir.

(*Id.* at PageID.450.)

The Hiltons allege that, in sending this email, Mish was acting in her capacity as City Attorney. The Hiltons further allege that, at the time Mish sent the email, Mish had access to the investigation file regarding EH's abduction and, therefore, had reason to know that her statements to Zerial were false. (ECF no. 1 at PageID.7.) The Hiltons subsequently obtained Mish's email through a third party's Freedom of Information Act request. (*Id.* at PageID.9–10.)

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

(2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  DISCUSSION

In Counts I and II of their complaint, the Hiltons allege that Mish violated the First Amendment when she retaliated against them and EH by sending the email to Zerial. The Hiltons allege that Mish retaliated against them based on their filing of the 2013 lawsuit, Elise Hilton's association with the Acton Institute, and Elise Hilton's speech on the issue of sex trafficking. In Count III, the Hiltons allege that Mish committed intentional infliction of emotional distress when she sent her email to Zerial.

**A.   Retaliation Claims**

In this Court's judgment, the Hiltons' and EH's § 1983 claims fail on two grounds: Mish was not acting in her capacity as the City Attorney when she wrote the email, and she is entitled to qualified immunity.

**1.   Mish Did Not Act Under Color of State Law**

In order to state a valid claim under § 1983, a plaintiff must allege that: (1) a deprivation of a right secured by the federal Constitution or laws; and (2) the defendant acted under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–56, 98 S. Ct. 1729, 1733 (1978). In general, a public official acts under color of state law when she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v.*

*Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)). "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001) (citing *West*, 487 U.S. at 49–50, 108 S. Ct. at 2255). The pertinent inquiry, then, is "whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.* In the context of police officers, the Sixth Circuit has noted that "'[t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. It is the nature of the act performed, not the clothing of the actor or even the status on duty, or off duty, which determines whether the officer has acted under color of law.'" *Mooneyhan v. Hawkins*, No. 96-6135, 1997 WL 685423, at *3 (6th Cir. Oct. 29, 1997) (quoting *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975)); *see also id.* at *4 (listing actions such as "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police departmental regulations" as actions indicative of official authority). Thus, the fact that an actor is a state official does not necessarily mean that she acted under color of law. A government actor's "private conduct, outside the course or scope of h[er] duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Waters*, 242 F.3d at 359.

It is apparent from the email chain that Mish was not acting pursuant to her duties as City Attorney in responding to Zerial's email. Zerial sent the email to the editor of the *Grand Rapids Press* and apparently copied or blind copied Mish. Zerial's email was directed at the newspaper,

suggesting that it report on the advertised series of lectures at the Acton Institute. Nothing in Zerial's email mentions the Acton Institute's tax exemption dispute with the City. Moreover, the text of Mish's email shows that she was offering her opinion as a private individual—a status she retains notwithstanding that she is also the City Attorney. Mish did not indicate in either her first or second response to Zerial that she was acting pursuant to her official duties as City Attorney or that she was speaking on behalf of the City. For example, Mish did not say that she was acting as City Attorney and did not sign her name in an official capacity as City Attorney. The fact that Mish used her work email to respond to Zerial's email, while arguably done in bad judgment, does not transform Mish's private conduct into official City business. *See Laxalt v. McClatchy*, 622 F. Supp. 737, 747 (D. Nev. 1985) (concluding that a senator's use of Senate stationery to demand a retraction in a news story did not transform the senator's action into action taken under color of federal law for purposes of a *Bivens* claim).

The Hiltons argue that Mish was acting pursuant to her official duties because she was responding to Zerial's citizen complaint that the City had abused its powers in denying the Acton Institute's request for tax exempt status. This argument is meritless because, as noted above, Zerial's email said nothing about the tax dispute. Since his email was not directed to Mish, Zerial was not complaining to Mish about anything at all. The Hiltons also argue that Mish was acting under color of state law because she had access to EH's investigation file, and, therefore, her statements to Zerial about the incident involving EH carried special weight that would not be accorded statements of a private citizen. This argument fails because, at bottom, it is really that Mish was acting under color of state law simply because she was the City Attorney. Such is not the law. As the Sixth Circuit recognizes, it is the nature of the action, not the status of the actor, that

8

determines whether an individual was acting under color of state law. *See Burris v. Thorpe*, 166 F. App'x 799, 802–03 (6th Cir. 2006) ("Simply put, when Thorpe was engaging in sexual intercourse with Burris, even when he was on duty and in uniform, he was not acting under color of state law."). Here, Mish did something that any private citizen could have done without the aid of official authority—express her views about the Acton Institute, the Hiltons, and their prior lawsuit.

Accordingly, Mish was not acting under color of state law when she responded to Zerial's email.

### 2.     Mish is Entitled to Qualified Immunity

Mish also argues that she is entitled to qualified immunity on the retaliation claims. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant official violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)). The ultimate question is whether the governmental official had "fair warning" that his conduct violated the plaintiff's constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 2515 (2002). There are two general steps in the qualified immunity analysis. First, "[t]he court must determine whether the 'the facts alleged show the officer's conduct violated a constitutional right.'" *Cass v. City of Dayton*, 770

F.3d 368, 374 (6th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). If the plaintiff's evidence demonstrates a constitutional injury, the court must then ask "whether that right was 'clearly established.'" *Id.* (quoting *Saucier*). Under *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009), a court may address either question first. *See McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 459–60 (6th Cir. 2014).

In order to allege a legally sufficient retaliation claim, a plaintiff must allege: (1) that she engaged in constitutionally-protected conduct; (2) the defendant took an adverse action that would likely deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). The Sixth Circuit has observed that "since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). This is simply a recognition of the broader rule that "*de minimis* injuries do not support a constitutional violation, even if intentionally inflicted." *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007).

Based on its review of Sixth Circuit cases, the Court notes that whether a defendant's statements, comments, or disclosure of information amounts to an adverse action depends on the particular circumstances of the case. However, certain general rules or principles can be gleaned from the cases. First, verbal abuse, foul language, and insensitive comments made to or about a plaintiff generally do not constitute adverse action. *See Taylor v. City of Falmouth*, 187 F. App'x 596, 600-01 (6th Cir. 2006). Second, general allegations of harm to one's character and reputation

10

resulting from "being held up to 'ridicule, contempt, shame, and disgrace,'" do not rise to the level of injury required for a constitutional violation. *Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999). Finally, statements containing false or embarrassing information can constitute adverse action if they are both publicly disclosed and the focus of the communication. *See id.* at 521 (citing *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), and *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997)). While some of Mish's statements in her email might be considered defamatory and, thus, more than mere verbal abuse and insults that do not amount to constitutional injury, Mish's email, and the circumstances in which she sent it, do not amount to adverse action because comments made to a third party in a private email exchange would not deter an average person of ordinary firmness—here a private citizen —from continuing to engage in litigation against the City, to be associated with a political advocacy organization, or to speak on the issue of sex trafficking.[1] Moreover, the Hiltons and EH allege only generalized harm that does not surmount the de minimis threshold required for constitutional injury.

The Hiltons rely primarily on three cases, *Bloch*, *Barrett*, and *Fritz v. Charter Township of Comstock*, 592 F.3d 718 (6th Cir. 2010), to support their argument that Mish's email constituted adverse action. In *Bloch*, the plaintiff alleged that in response to newspaper articles reporting the plaintiff's statements that were critical of the sheriff's lack of progress in investigating her alleged rape, the sheriff held a press conference, during which he released highly embarrassing details of the rape that the plaintiff had not even disclosed to her husband. 156 F.3d at 676. The court held that the plaintiff adequately alleged an adverse action because, while the sheriff had the right to respond

---

[1] Many of Mish's statements are opinions about the Hiltons and the Acton Institute, which are themselves protected speech under the First Amendment.

to the plaintiff's criticisms, such right did not extend to the release of irrelevant, humiliating, and confidential information. *Id.* at 681. In *Barrett*, the plaintiff alleged that a state-court judge retaliated against him for investigating illegal conduct by the judge by falsely accusing the plaintiff, in statements to the media, of stalking her. 130 F.3d at 262. The court addressed whether the plaintiff engaged in protected conduct and whether such conduct was a "substantial" or "motivating" factor in the judge's accusations against the plaintiff, but the court did not address whether the judge's statements to the media constituted adverse action. *Id.* at 262–63. Nonetheless, the court concluded that the plaintiff presented sufficient evidence to survive summary judgment. *Id.* at 263. Finally, in *Fritz*, the plaintiff alleged that the defendant retaliated against her by making certain statements to the plaintiff's employer that were intended to threaten the plaintiff's economic livelihood and ultimately led the employer to terminate its contract with the plaintiff. 592 F.3d at 728. The court observed that "[s]ince few aspects of one's life are more important than gainful employment, it is likely that a person of ordinary firmness would be deterred by this conduct." *Id.*

The circumstances of the instant case are materially distinguishable from those in *Bloch*, *Barrett*, and *Fritz*. In contrast to the defendant in *Bloch*, who made statements about the plaintiff in a press conference, and the defendant in *Barrett*, who made statements about the plaintiff to newspaper and television reporters, Mish made statements about the Hiltons and EH in an email to a single private individual, who apparently never disclosed the email to the Hiltons or anyone else. And, in contrast to *Fritz*, the Hiltons and EH allege no facts suggesting that Mish's statements to Zerial were designed to inflict any type of concrete damage on the Hiltons or EH, such as loss of employment. In fact, the complaint is devoid of any fact suggesting that Zerial had any type of legal relationship with the Hiltons or EH that Mish intended to affect.

12

The facts in this case are more akin to those in *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580 (6th Cir. 2012), in which the Sixth Circuit held that the plaintiff failed to allege an adverse action. The plaintiff in *Wurzelbacher*—a private citizen like the Hiltons and EH—alleged that the defendants retaliated against him by conducting an improper search of state databases. In rejecting the plaintiff's retaliation claim, the court said:

> [The plaintiff] asserts that defendants, without his knowledge, performed several improper database searches under his name. However, the complaint contains no information regarding what, if any, information was discovered. Moreover, if any information was obtained, it was never publicly disclosed. [The plaintiff] did not suffer a threat to his economic livelihood, was not defamed, did not endure a search or seizure of property, and did not experience the public disclosure of intimate or embarrassing information. In addition, [the plaintiff] was not threatened with a continuing governmental investigation, and he does not allege that defendants' actions in fact caused a 'chill' of his First Amendment rights. . . .

*Id.* at 584 (internal citations omitted). Moreover, the court said that the plaintiff's allegation that "his knowledge of the improper database searches caused him to suffer 'emotional distress, harassment, personal humiliation, and embarrassment," were "too generalized to withstand judgment on the pleadings." *Id.*

*Wurzelbacher* is distinguishable from the instant case in that *Wurzelbacher* involved computer database searches, whereas the Mish's alleged adverse action is an email that made arguably defamatory statements, at least about EH. As the court noted in *Fritz*, however, the issue is not whether statements are defamatory but, instead, whether they are made under circumstances that amount to an adverse action for purposes of § 1983. *Fritz*, 592 F.3d at 727. *Wurzelbacher* is pertinent here because Mish's statement to Zerial was never publicly disclosed. In fact, the Hiltons learned of the email, after more than a year, by happenstance when a third party obtained it through a FOIA request and sent it to the Hiltons. In addition, and perhaps more importantly, like the

13

plaintiff in *Wurzelbacher*, the Hiltons allege only "anger, humiliation, mortification and outrage" as a result of the email—"allegations [that] are too generalized to withstand" dismissal. *Wurzelbacher*, 675 F.3d at 584. Having concluded that the Hiltons and EH fail to allege a constitutional violation, the Court need not address the second prong of the qualified immunity analysis. *See Summerland v. Cnty. of Livingston*, 240 F. App'x 70, 78 (6th Cir. 2007).

### 3. Municipal Liability

Citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292 (1986), the Hiltons argue that because Mish had the ultimate authority to respond to citizen emails regarding the Acton Institute tax dispute, the City is liable for Mish's actions. Because the Hiltons and EH fail to allege a constitutional violation, any claim for municipal liability is foreclosed. *See Kinkus v. Vill. of Yorkville*, 289 F. App'x 86, 93 (6th Cir. 2008) (noting that "absent any constitutional violation, there can be no municipal liability").[2]

### . B. Intentional Infliction of Emotional Distress[3]

The elements of an intentional infliction of emotional distress claim are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004). "The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

---

[2] Even if the Court were to conclude that the Hiltons alleged a constitutional violation, and even if Mish had policymaking authority, the municipal liability claim would fail because there is no reasonable argument that Mish was engaged policymaking when she sent the email to Zerial. Policymaking entails a "deliberate choice" among various alternatives to follow a particular course of action. *Pembaur*, 475 U.S. at 483, 106 S. Ct. at 1300. Nothing in Mish's email can reasonably be construed as a choice by the City to do anything.

[3] Although the Court would normally dismiss the state-law claim, *see* 28 U.S.C. § 1367(c)(3), in light of the obvious failings of the state-law claim, the Court exercises its discretion decide the claim.

community.'" *Id.* at 577, 686 N.W.2d at 276-77 (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999). A defendant may not be held liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *See Lewis v. LeGrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675, 689 (2003).

The Hilton's and EH's intentional infliction of emotional distress claim fails because their allegations show that Mish did not act intentionally or recklessly to cause the Hiltons and EH emotional distress. As noted, Mish sent her email to Zerial, not the Hiltons or EH. There is no allegation suggesting that Mish had any reason to believe that her email would be seen by the Hiltons or EH. In fact, the Hiltons discovered it almost a year later by happenstance.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions and dismiss the complaint with prejudice.

A separate order will enter.


Dated: December 13, 2016                     /s/ Gordon J. Quist
                                             GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE